**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETER C. HAYWARD, KELLY GARCIA, and MATTHEW YBARRA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MPARTICLE, INC. and ROKT US CORP.,

Defendants.

**Oral Argument Requested**

Case No. 1:25-CV-08173-PAE

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MPARTICLE, INC. AND ROKT US CORP.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND STRIKE NATIONWIDE CLASS ALLEGATIONS**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................1

II. RELEVANT FACTUAL BACKGROUND ....................................................2

III. ARGUMENT ....................................................3

A. Plaintiffs Have No Actionable Claims Against Defendants ....................................................3

1. Applicable Legal Standard ....................................................3

2. Plaintiffs Lack Article III Standing Absent Any Injury-In-Fact ....................................................4

3. The Complaint Fails to State A Common Law Claim for Intrusion Upon Seclusion or A Constitutional Claim for Invasion of Privacy ....................................................5

i. Plaintiffs Have No Reasonable Expectation of Privacy ....................................................6

ii. Defendants' Alleged Conduct Was Neither Sufficiently Offensive or Serious to Constitute an Actionable Intrusion ....................................................7

4. Plaintiffs Fail to Adequately Plead Their CIPA Claims ....................................................8

i. The Rule of Lenity Supports Limited Application of CIPA ....................................................9

ii. Plaintiffs Fail to State a Claim Under Penal Code Section 631 ....................................................10

iii. Plaintiffs Fail to State a Claim Under Penal Code Section 632 ....................................................11

iv. Plaintiffs Trap and Trace/Pen Register Claim Fails ....................................................12

5. Plaintiffs Lack Statutory Standing to Assert a CDAFA Violation ....................................................14

6. Plaintiffs' Equitable Relief Claims Should Be Dismissed ....................................................15

B. Plaintiffs' Nationwide Class Allegations Should Be Stricken ....................................................16

1. Applicable Legal Standard ....................................................17

2. Non-California Putative Class Members Cannot Invoke the California Constitution, CIPA, and CDAFA ....................................................18

3. Non-California Putative Class Members Cannot Invoke California Law ....................................................21

i. Material Variance Among State Common Law Exists ....................................................21

ii. Putative Class Members' Home States Have An Interest In Applying Their Laws ....23

iii. States' Interests Would be Impaired by Application of California Law ....23

IV. CONCLUSION ....24

CERTIFICATION PURSUANT TO LOCAL RULE 7.1(C) ....26

CERTIFICATE OF SERVICE ....27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of U.S. for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer*
885 F.Supp. 197 (C.D. Cal. 1995) ....................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 4

*Barbash v. STX Financing, LLC*,
2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020)....................22

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ....................3

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528 (N.D. Cal. 2015)....................22

*Bibiano v. Lynch*,
834 F.3d 966 (9th Cir. 2016) ....................3

*Borgese v. Baby Brezza Enters. LLC*,
2021 WL 634722 (S.D.N.Y. Feb. 18, 2021)....................17

*Brewer v. Superior Ct. of California, Cty. of Los Angeles*,
Case No. 2:25-04362-TJH (ADS), 2025 WL 3070482 (C.D. Cal. Sept. 29, 2025) ....................15

*Busse v. Motorola, Inc.*,
813 N.E.2d 1013 (2004)....................23

*Carolus v. Nexstar Media Inc.*,
No. 24-cv-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)....................4, 8

*Carovillano v. Sirius XM Radio Inc.*,
23 Civ. 4723 (PAE), 2024 WL 3460040 (S.D.N.Y. July 18, 2024)....................17

*Cavey v. MarketPro Homebuyers, LLC*,
542 F. Supp. 3d 418 (E.D. Va. 2021) ....................22

*Cody v. Ring LLC*,
718 F.Supp.3d 993 (N.D. Cal. 2024)....................10, 11

*Cornelius v. Markle Investigations, Inc.*,
2022 WL 620616 (Conn. Super. Ct. Feb. 1, 2022), *aff'd*, 220 Conn. App. 135, 297 A.3d 248 (2023) ....23

*Cotter v. Lyft, Inc.*,
60 F.Supp.3d 1059 (N.D. Cal. 2014) ....18

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600-JSC, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ....11

*Cruz v. McAneney*,
31 A.D. 54 (2d Dept. 2006) ....22

*Daly v. Glanbia Performance Nutrition, Inc.*,
Case No. 23 C 933, 2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) ....18

*DellaSalla v. Samba TV, Inc.*,
Case No. 3:25-cv-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ....8, 15, 19, 20

*Doe v. Cty. of Santa Clara*,
No. 23-CV-04411-WHO-2024 ....14

*Doe v. Eating Recovery Center LLC*,
Case No. 23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ....9, 10

*Doe v. Kaiser Foundation Health Plan Inc.*,
Case No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .... *passim*

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
402 F.Supp.3d 767 (N.D. Cal. 2019) ....15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....7, 8

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ....12

*In re Ford Tailgate Litig.*,
No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014), *order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014) ....16

*Frezza v. Google Inc.*,
2013 WL 1736788 (N.D.Cal. Apr. 22, 2013) ....23

*Gabrielli v. Insider, Inc.*,
No. 24-cv-01566-ER, 2025 WL 52215 (S.D.N.Y. Feb. 18, 2025) ....5

*Glass v. Tradesmen Int'l, LLC*,
2020 WL 820655 (N.D. Ohio Feb. 19, 2020) ..........18

*Goe v. Zucker*,
43 F.4th 19 (2d. Cir. 2022) ..........4

*Golden v. NBCUniversal Media, LLC*,
22 Civ. 9858 (PAE), 2025 WL 2530689 (S.D.N.Y. Sept. 3, 2025) ..........4

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..........7, 11

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ..........8

*Grant v. New York Times Co.*,
329 F.R.D. 27 (S.D.N.Y. 2018) ..........17

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (Bybee, J., concurring) ..........10

*Hageman v. Hyundai Motor Am.*,
2024 WL 694378 (C.D. Cal. Jan. 5, 2024) ..........22

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ..........7

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933074 (N.D. Cal. June 9, 2023) ..........15

*Heeger v. Facebook, Inc.*,
No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ..........6

*Henderson v. Chicago Cubs Baseball Club, LLC*,
2018 WL 3326682 (C.D. Cal. May 24, 2018) ..........18

*Hernandez-Silva v. Infrastructure, Inc.*,
Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ..........14

*Hubbard v. Google LLC*,
No. 19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ..........8, 15, 16

*Huynh v. Blanchard*,
694 S.W.3d 648 (Tex. 2024) ..........22

*I.C. v. Zynga, Inc.*,
600 F.Supp.3d 1034 (N.D. Cal. 2022) ..........7

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................8, 14

*Isaac v. Politico LLC*,
2025 WL 2437093 (Del. Aug. 25, 2025) ....................23

*James v. Walt Disney Co.*,
701 F.Supp.3d 942 (N.D. Cal. Nov. 8, 2023) ....................21, 24

*Jonczyk v. First Nat'l Capital Corp.*,
No. SACV 13-959-JLS 2014 WL 1689281 (C.D. Cal. Jan. 22, 2014)....................10, 20, 24

*Kassman v. KPMG LLP*,
925 F.Supp.2d 453 (S.D.N.Y. 2013)....................17, 18

*King v. Hard Rock Café Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
Case No. 25-c-v01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025)....................4

*People ex rel. Klaeren v. Vill. of Lisle*,
202 Ill. 2d 164 (2002) ....................22

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)....................17

*L.B. v. LinkedIn Corp.*,
No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ....................11

*Licea v. Cinmar, LLC*,
659 F.Supp.3d 1106 (C.D. Cal. 2023) ....................10

*Lineberry v. AddShopper, Inc.*,
Case No. 23-cv-01996-VC, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ....................14, 19, 20

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................5, 8, 14, 15

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).................... *passim*

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ....................5

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) ....................12

*Mitchener v. Talkspace Network LLC*,
Case No. 2:24-cv-07067-JAK, 2025 WL 1822801 (C.D. Cal. June 27, 2025) ....................8

*People v. Martinez*,
88 Cal.App.4th 465 (2001) ....................18

*Perez v. Romantix Online, Inc.*,
No. 25-CV-02465-NW, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ....................15

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Cir. Aug. 26, 2025) ....................4

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-CV-0402-L-DDL, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) ....................6, 7

*Price v. Converse, Inc.*,
2:24-cv-08091-FLA (Ex), 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) ....................5

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ....................14

*Ramos v. The Gap, Inc.*,
2025 WL 2144837 (N.D. Cal. July 29, 2025) ....................10

*Rodriguez v. Culligan Int'l Co.*,
Case No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ....................5

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ....................3

*Sanders v. Apple Inc.*,
672 F.Supp.2d 987 (N.D. Cal. 2009) ....................17

*Shah v. Capital One Fin. Corp.*,
768 F.Supp.3d 1033 (N.D. Cal. Mar. 3, 2025) ....................15

*Shaner v. UPMC Susquehanna*,
2020 WL 1460717 (Pa. Super. Ct. Mar. 24, 2020) ....................23

*Shulman v. Group W Prods., Inc.*
(1998) 18 Cal. 4th 200 ....................5

*Smith v. Maryland*,
442 U.S. 735 ....................12

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ....................19

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*,
573 Pa. 637 (2003) ....................22

*Swarthout v. Mut. Serv. Life Ins. Co.*,
632 N.W.2d 741 (Minn. Ct. App. 2001) ....................23

*Taus v. Loftus*,
151 P.3d 1185 (2007) ....................23

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024),
*aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025) ....................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................3, 4

*Tupper v. Roan*,
349 Or. 211 (Or. 2010) ....................22

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019) ....................17

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) ....................13

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ....................17

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ....................21, 23

**Statutes**

18 U.S.C. § 3121, *et seq.* ....................13

18 U.S.C. § 3127(3)-(4) ....................13

Cal. Penal Code § 502(a) ....................19

Cal. Penal Code § 502(e)(1) ....................14

Cal. Penal Code § 630 ....................19

Cal. Penal Code § 631 ....................9, 10

Cal. Penal Code § 631(a) ....................10, 11

Cal. Penal Code § 632 ....................9, 10, 11, 12

Cal. Penal Code § 632(a) ....................12

Cal. Penal Code § 632.01(a)(1) ....................10

Cal. Penal Code § 632.7 ....................9

Cal. Penal Code § 638 ....................9

Cal. Penal Code § 638.32(c) ....................13

Cal. Penal Code §§ 638.50(b)-(c) ....................13

Cal. Penal Code § 638.51 ....................12

Cal. Penal Code § 638.51(c) ....................9

**Other Authorities**

2015-2016 Regular Session (June 16, 2015) ....................13

California Assembly Bill 929 ....................13

California Constitution .................... *passim*

California Constitution Article I, section 1 ....................5

Federal Rule of Civil Procedure 12(b)(1) ....................3

Federal Rule of Civil Procedure Rule 12(b)(6) ....................3

Federal Rule of Civil Procedure Rule 12(f) ....................17

Federal Rule of Civil Procedure Rule 23 ....................16

Federal Rule of Civil Procedure Rule 23(d) ....................17

Federal Rule of Civil Procedure 23(d)(1)(D) ....................17

# I. INTRODUCTION

Plaintiffs Peter C. Hayward, Kelly Garcia, and Matthew Ybarra (collectively, "Plaintiffs") commenced this "kitchen-sink" putative nationwide class action in the Northern District of California despite practically no nexus to that forum. While Plaintiffs' claims have now moved cross-country, they have not improved with a change of scenery.

As a threshold matter, Plaintiffs lack Article III standing to maintain this action. Plaintiffs' claims rest on the routine collection of innocuous contact information and device identifying data, which does not implicate a protectable privacy interest. Because Plaintiffs do not clear this gateway hurdle, the Court lacks subject matter jurisdiction over their claims.

Further, Plaintiffs' California constitutional, statutory, and common law claims are ripe for dismissal. Plaintiffs do not allege that Defendants held a reasonable expectation of privacy in their routine online activity or that any alleged "intrusion" was sufficiently offensive. Plaintiffs also bring claims under the California Invasion of Privacy ("CIPA"), a maligned statute enacted in 1967 to criminalize wiretapping and eavesdropping. Plaintiffs' opportunistic efforts to map CIPA onto ubiquitous website activity fails because Defendants did not "intercept" any communications "in transit," monitor any confidential communications, and Plaintiffs otherwise do not plead the requisite elements for their CIPA claims. Plaintiffs' Comprehensive Computer Data Access and Fraud Act ("CDAFA") claim fails because Plaintiffs have not sustained the requisite harm under the statute. To boot, Plaintiffs' unjust enrichment and injunctive relief claims are not independent causes of action and fail given available adequate remedies at law.

Plaintiffs' nationwide class allegations also should be stricken because Plaintiffs cannot maintain claims under California law on behalf of putative class members who reside outside of California. Non-California residents cannot avail themselves of the protections of the California Constitution, CIPA, and CDAFA, neither of which has extraterritorial application beyond

California's borders. Moreover, because there are material differences among the laws of the fifty states—in which putative class members reside—with respect to Plaintiffs' common law claims, California law cannot uniformly govern this action.

## II. RELEVANT FACTUAL BACKGROUND

Rokt is a New York global e-commerce marketing platform, utilized by numerous e-commerce brands. (SAC ¶¶ 50-52.) Rokt utilizes machine learning to aid its e-commerce clients in displaying targeted advertisements to their customers. (SAC ¶ 54.) Given the synergies between their ad-targeting services, mParticle and Rokt merged in January 2025. (SAC ¶ 57.)

mParticle is a New York-based technology company that provides a software known as "IDSync" to its online business clients to assist in their management of customer data in real time. (SAC ¶¶ 43-44, 47.) mParticle's software development kit ("SDK") runs across various platforms, including websites and mobile applications, to compile and process visitor activity. (SAC ¶ 5.) The SDK allows its clients to optimize advertising on their respective platforms. (SAC ¶¶ 46.) Plaintiffs contend that mParticle knowingly deploys its SDK and related services to develop comprehensive user profiles that enable its clients to display targeted, personalized advertising. (SAC ¶¶ 87, 93.) To facilitate this process, mParticle assigns website visitors with an mParticle ID and mParticle device ID. (SAC ¶¶ 4, 14, 25, 33, 73-74.)

Plaintiff Hayward contends that when he voluntarily used the online services of Venmo, JetBlue,[1] and Peacock, mParticle's SDK collected routine identifiable information about him, including his email address, Venmo name, and phone number. (SAC ¶¶ 13, 15-16, 18-19.) Plaintiffs Garcia and Ybarra make similar allegations with respect to their use of Venmo's

---

[1] Plaintiff Hayward premises his claims in part on his supposed use of JetBlue's website (SAC ¶ 13.) But like its two predecessors, the SAC lacks allegations about Defendants' collection of personal data via JetBlue, or Hayward's supposed visit to JetBlue's website. (*See generally*, SAC; Compl. (ECF No. 1); First Am. Compl. (ECF No. 32).)

website. (SAC ¶¶ 24, 27-28, 32, 38-39.) Plaintiff Ybarra also contends that unspecified video content he viewed on the Peacock application was intercepted. (SAC ¶¶ 35-36.) Plaintiffs allege that their mParticle and advertising IDs were intercepted. (SAC ¶¶ 16, 18, 27, 35, 38.) Plaintiffs contend that mParticle unlawfully tracked their web activity and stored their collected information in consolidated user profiles for commercial purposes. (SAC ¶¶ 22, 30, 42.)

On these allegations, Plaintiffs seek to maintain claims under the California Constitution, California statutes, and California common law on behalf of a putative nationwide class who (1) "were assigned an mParticle ID or had their personally identifiable information intercepted by, or shared with, mParticle[,]" and (2) "had their communications with third parties intercepted by, shared with, or used by mParticle without their consent." (SAC ¶¶ 135, 143-44.)

## III. ARGUMENT

### A. Plaintiffs Have No Actionable Claims Against Defendants

#### 1. Applicable Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires the Court to assess subject matter jurisdiction "before moving on to other, non-merits threshold issues." *Bibiano v. Lynch*, 834 F.3d 966, 971 n. 4 (9th Cir. 2016). A jurisdictional attack "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* (citation omitted). "[S]tanding is a threshold matter central to subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). To establish standing, a plaintiff must show an invasion of a legally protected interest that is concrete and particularized. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading must be comprised of more than "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). Although the Court accepts all factual allegations as true, "[the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Golden v. NBCUniversal Media, LLC*, 22 Civ. 9858 (PAE), 2025 WL 2530689, at *5 (S.D.N.Y. Sept. 3, 2025).[2]

**2. <u>Plaintiffs Lack Article III Standing Absent Any Injury-In-Fact</u>**

An injury in fact is characterized by actual harm, and cannot be solely predicated on a mere purported statutory violation. *TransUnion LLC*, 594 U.S. at 430-31. Here, Plaintiffs' claims are based on the alleged interception and disclosure of device identifiers, basic contact information, and routine online activity. (SAC ¶¶ 13, 15-16, 18-19, 24, 27, 32, 35, 38-39.) However, this alleged disclosure does not implicate a protectable privacy interest. *See Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *5 (9th Cir. Cir. Aug. 26, 2025) (tracking of plaintiff's interactions on pet supplies website did not cause "any kind of harm … remotely similar to the highly offensive interferences or disclosures that were actionable at common law"); *Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (dismissing privacy claims because alleged tracking of "browser and device data, "other identifying information," and "IP addresses" did not give rise to injury in fact); *Kishnani v. Royal Caribbean Cruises Ltd.*, Case No. 25-c-v01473, 2025 WL 1745726, at *4 (N.D. Cal.

---

[2] In adjudicating the instant motion, the Court may take judicial notice of relevant legislative history. *Goe v. Zucker*, 43 F.4th 19, 29 (citing *Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226-27).

June 24, 2025) (mere collection of basic contact information did not give rise to concrete harm).[3] The IDSync technology's theoretical capability to use collected information to inform advertising and data analytics does not mean that Plaintiffs were subjected to targeted advertising or otherwise actually harmed by the alleged conduct. The alleged retention of noninvasive information does not confer Plaintiffs with Article III standing.

### 3. <u>The Complaint Fails to State A Common Law Claim for Intrusion Upon Seclusion or A Constitutional Claim for Invasion of Privacy</u>

Plaintiffs assert claims in tandem for intrusion upon seclusion and purported privacy violations under Article I, section 1 of the California Constitution. (SAC ¶¶ 145-67.) To state a claim for intrusion upon seclusion, a plaintiff must allege "(1) intrusion into a private place, conversation or matter (2) in a manner highly offensive to a reasonable person." *Shulman v. Group W Prods., Inc.* (1998) 18 Cal. 4th 200, 231. To allege a violation of California's constitutional right to privacy, a plaintiff must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1024 (N.D. Cal. 2012) (citation omitted).

When brought together, "it is appropriate to assess the two claims together and examine 'the[ir] largely parallel elements' which call on the Court to consider '(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests.'" *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1031-37 (N.D. Cal. 2019). "A plaintiff's expectation of privacy in a specific

---

[3] *See also Gabrielli v. Insider, Inc.*, No. 24-cv-01566-ER, 2025 WL 52215, at *3 (S.D.N.Y. Feb. 18, 2025); *Rodriguez v. Culligan Int'l Co.*, Case No.: 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025); *Price v. Converse, Inc.*, 2:24-cv-08091-FLA (Ex), 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025).

context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved." *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (internal quotation marks and citation omitted).

**i. <u>Plaintiffs Have No Reasonable Expectation of Privacy</u>**

The existence of a reasonable expectation of privacy depends on whether a "defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402-L-DDL, 2024 WL 5114133, at *6 (S.D. Cal. Dec. 13, 2024). This "depends on 'a variety of factors, including the customs, practices, and circumstances surrounding defendant's particular activities.'" *Id.* (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602 (9th Cir. 2020)).

As relevant here, "[g]iven the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *1-2 (S.D. Cal. May 8, 2024), *aff'd*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025); *King v. Hard Rock Café Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025) ("internet communications do not have an objectively reasonable expectation of confidentiality").

While Plaintiffs contend that Defendants collect "every piece of data" about a user (SAC ¶ 70), the SAC reveals the unremarkable nature of the information allegedly collected. Plaintiffs fail to identify any intimate or sensitive personally identifiable information in which they maintain a reasonable expectation of privacy that was captured. Rather, the majority of the allegedly recorded data constitutes unremarkable personal information that is routinely collected as part of electronic communications. (SAC ¶¶ 16-21, 27, 35-36, 38 (alleging intercepted data included email address, phone numbers, device identifiers, viewed video titles, and non-

confidential Venmo transaction information).) Further, Plaintiffs cannot plausibly contend a privacy interest in mParticle-generated IDs (SAC ¶ 16, 18, 27, 35), which are not personally sensitive but rather generated by mParticle. The data allegedly collected constitutes, at most, basic contact information that does not establish intrusion upon seclusion. *Harrill v. Emanuel Med. Ctr.*, No. 2:23-cv-01672-DC-CKD, 2025 WL 1635428, at *7 (E.D. Cal. June 9, 2025) (disclosure of user's browser history was not highly offensive); *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1049 (N.D. Cal. 2022) (collection of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" was insufficiently concrete for intrusion upon seclusion.); *Posadas*, *supra*, 2024 WL 5114133, at *7.

**ii. <u>Defendants' Alleged Conduct Was Neither Sufficiently Offensive or Serious to Constitute an Actionable Intrusion</u>**

Even if Plaintiffs have a reasonable expectation of privacy in data allegedly captured, "'[t]he California Constitution and the common law set a high bar' for an intrusion to be actionable." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (citation omitted). "Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606. "[T]he highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.*

The basic information allegedly collected does not give rise to a "highly offensive invasion" of privacy. (SAC ¶¶ 16-21, 38.) Indeed, "[m]any courts have found that the collection—and even disclosure to certain third parties—of personal information about the user's use of a technology may not constitute a sufficiently egregious breach of social norms to make

out a common law or constitutional privacy claim." *Id.* (internal quotation marks omitted); *see In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (no intrusion based on collection of users' data, including browsing histories); *Low*, *supra*, 900 F. Supp. 2d at 1025; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

To the extent Plaintiffs' invasion of privacy claim is predicated on the alleged capture of their IP addresses (SAC ¶¶ 77, 119), such contention fails. There is no protected privacy interest in a website visitor's IP address. *See DellaSalla v. Samba TV, Inc.*, Case No. 3:25-cv-03470-JSC, 2025 WL 3034069, at *5 (N.D. Cal. Oct. 30, 2025) (holding that disclosure of individual's IP address does not constitute highly offensive interference or actionable disclosure); *Carolus*, *supra*, 2025 WL 1338193, at *1; *Mitchener v. Talkspace Network LLC,* Case No. 2:24-cv-07067-JAK (BFMx), 2025 WL 1822801, at *7-8 (C.D. Cal. June 27, 2025).

The collection of commonly exchanged data on the internet constitutes "routine commercial behavior." *Low*, *supra*, 900 F. Supp. 2d at 1025. "[D]ata collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hubbard*, *supra*, 2024 WL 3302066, at *7 (citation omitted); *see also*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). ("Even assuming [unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices] w[ere] transmitted without Plaintiffs' knowledge and consent … such disclosure does not constitute an egregious breach of social norms.") (citation omitted). Defendants did not engage in any conduct that would meet the high bar for highly offensive behavior.

**4. <u>Plaintiffs Fail to Adequately Plead Their CIPA Claims</u>**

"The language of CIPA is a total mess. It was a mess from the get-go, but the mess gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's

already-obtuse language to new technologies." *Doe v. Eating Recovery Center LLC*, Case No. 23-cv-05561-VC, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025). Against this murky backdrop, Plaintiffs assert four CIPA claims for (i) alleged "wiretapping" and "aiding and abetting" under Cal. Penal Code § 631; (ii) alleged "eavesdropping" under Cal. Penal Code § 632; and (iii) alleged misuse of a "pen register" or "trap and trace device" under Cal. Penal Code § 638. The SAC fails to establish the requisite elements for each cause of action.

**i. <u>The Rule of Lenity Supports Limited Application of CIPA</u>**

It cannot be lost that CIPA is a criminal statute permitting the imposition of criminal liability and punitive civil penalties. *See, e.g.*, Penal Code §§ 631(a), 638.51(c). As such, "there is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated" involving internet communications. *Eating Recovery Center LLC*, 2025 WL 2971090, at *6. Given CIPA's inherent ambiguities and dubious application here, such ambiguities must be resolved in Defendants' favor under the rule of lenity. *Id.* at *1 ("When courts are called upon to interpret ambiguous criminal statutes in California, the rule of lenity applies—even when the statute is being invoked in a civil action. Courts are also supposed to narrowly construe civil statutes that impose civil penalties.") (internal citations omitted).

After its enactment in 1967, the California Legislature amended CIPA with the advent of certain new technologies. *See, e.g.*, Cal. Penal Code § 632.7. Notwithstanding the internet's ubiquity today, the California Legislature has largely refrained from amending CIPA to expressly cover internet or website activity. *See Eating Recovery Center LLC*, 2025 WL 2971090, at *6 ("Recall that CIPA was enacted in 1967. Its language—with words like "read" and "intercept" and "in transit"—is ill-suited for application to internet communications. The Legislature has never, in over four decades, amended Section 631 to adapt its language to the

digital age … using a third-party company to perform data analytics for web traffic is worlds different from wiretapping and eavesdropping"). When the Legislature has intended for CIPA to apply to the internet, it expressly stated as much. *See* Cal. Penal Code § 632.01(a)(1) ("A person who violates subdivision (a) of Section 632 shall be punished pursuant to subdivision (b), if the person intentionally discloses or distributes, in any manner, in any forum, ***including, but not limited to, Internet Web sites and social media*** . . .") (emphasis added); *Cody v. Ring LLC*, 718 F.Supp.3d 993, 999 (N.D. Cal. 2024) (emphasizing that "CIPA's multiple amendments, including in 2011 and 2022 … [did] not update[] clause one [of Section 631] to include internet technologies."); *Licea v. Cinmar, LLC*, 659 F.Supp.3d 1106, 1112 (C.D. Cal. 2023).

**ii. <u>Plaintiffs Fail to State a Claim Under Penal Code Section 631</u>**

*First*, Section 631(a)'s first clause prohibits the wiretapping of "any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any telephonic communication system[.]" Cal. Penal Code § 631(a). This prohibition clearly applies to telephone communications only. *Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *1, *3 (Bybee, J., concurring) (… § 631(a)'s text, legislative history, subsequent augmentation, and relative ambiguity … compel the conclusion that § 631(a)'s first clause does not apply to the internet"); *see also Eating Recovery Center LLC*, *supra*, 2025 WL 2971090, at *4; *Ramos v. The Gap, Inc.*, 2025 WL 2144837, at *3 (N.D. Cal. July 29, 2025).

Plaintiffs allege that any interception was confined to their online activity. (SAC ¶¶ 1, 9, 13, 22, 24, 30, 32, 42, 44, 83.) The SAC lacks any allegations that Plaintiffs utilized their telephones to access any websites or applications, or that Defendants performed any interception via telephone. (*See generally*, SAC.) Accordingly, Section 631(a)'s first clause is not triggered.

*Second*, to establish a claim under Section 631(a)'s second clause, Plaintiffs must allege

that Defendants "in any unauthorized manner, read[], or attempt[ed] to read, or to learn the contents or meaning of any message, report, or communication ***while the same is in transit***…." Cal. Penal Code § 631(a) (emphasis added). Plaintiffs' allegations do not establish "in transit" interception. (*See* SAC ¶¶ 4-5, 17, 20, 28, 37.) The SAC acknowledges that any reading or learning of contents occurs through a multi-step process via the IDSync technology, not in actual real-time fashion. (*Id.* ¶¶ 86-89.) Plaintiffs' statutory restatements and use of the phrases term "intercept," "in transit," and "real-time" in the SAC are insufficient to establish a plausible claim that their communications were interpreted while in transit in violation of Section 631(a)'s second clause. *See L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing Section 631(a) clause two claim where allegations failed to specifically allege when or how defendant intercepted communication in transit); *Crano v. Sojern, Inc.*, No. 3:25-CV-02600-JSC, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (interception did not occur in transmission given alleged process of "redirect[ing] data" and "stor[ing] information in a centralized location").

*Third*, and finally, Plaintiffs' claims under Section 631(a)'s third and fourth clauses are derivative in nature and presuppose a violation of the two preceding clauses. Cal. Penal Code § 631(a). Because Plaintiffs cannot establish a violation of the first or second clauses, their claims under the third and fourth clauses fail. *See Cody*, 718 F.Supp.3d at 1003; *In re Google Assistant Privacy Litig.*, *supra*, 457 F.Supp.3d 797, 827.

**iii. <u>Plaintiffs Fail to State a Claim Under Penal Code Section 632</u>**

To establish a claim under Section 632, Plaintiffs must allege that Defendants "intentionally and without the consent of all parties to a confidential communication, use[d] an electronic amplifying or recording device to eavesdrop upon or record the confidential

communication … carried on … by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a). A communication is confidential "if a party has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.4th 766, 777 (2002). As set forth above, internet communications do not reasonably give rise to an expectation of privacy. *See supra* at Section III(A)(3). Given this presumption, Plaintiffs must "show[] that there is something unique about these particular internet communications which justify departing from the presumption." *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 799 (N.D. Cal. 2022) (distinguishing communications made in context of patient-medical provider relationship from routine online communications). Here, Plaintiffs do not plausibly allege that they had an expectation of privacy in their routine online interactions to disturb this presumption. (*See generally* SAC.) Absent a reasonable expectation of privacy, Plaintiffs' Section 632 claim fails.

**iv. <u>Plaintiffs Trap and Trace/Pen Register Claim Fails</u>**

To establish their alleged CIPA claim, Plaintiffs must demonstrate that Defendants used a pen register or trap and trace device without their consent in violation of Penal Code section 638.51. Because CIPA's trap and trace/pen register provisions regulate the recording of information through incoming or outgoing telephone calls only, Plaintiffs' SAC falls short.

A "pen register" is "a device or process that records or decodes dialing, routing, addressing or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Penal Code § 638.50(b); *see also Smith v. Maryland*, 442 U.S. 735, n. 1(1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications and

does not indicate whether calls are actually completed."); *United States v. New York Tel. Co.*, 434 U.S. 159, 167 (1977). A "trap and trace device" is "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Penal Code § 638.50(c).

CIPA's provisions confirm that a trap and trace device or pen register have been used to aid law enforcement in carrying out telephone surveillance for criminal investigations. Cal. Penal Code §§ 638.32(c) ("Information acquired solely pursuant to the authority for a pen register or trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined ***from the telephone number***."); 638.32(d)(1) (an order authorizing installation and use of a trap and trace device should specify "[t]he identity, if known, of the person … in whose name is listed ***the telephone line to which the pen register or trap and trace device is to be attached***") (emphasis added).[4]

CIPA's legislative history reinforces that the trap and trace statute does not cover internet activity. *See* Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015), at 7 (explaining that the bill "provides that an order [authorizing use of a trap and trace device] shall specify … ***[t]he number and, if known, physical location of the telephone line to which the pen register or trap and trace***

[4] CIPA's trap and trace statute was modeled after federal analog trap and trace statute—the Pen Register Act. *See* Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015), at 1-4 (referencing existing federal trap and trace law under 18 U.S.C. § 3121, *et seq.*).) The definitions of "pen register" and "trap and trace device" under CIPA mirror those under its federal counterpart. *Compare* Cal. Penal Code §§ 638.50(b)-(c), *with* 18 U.S.C. § 3127(3)-(4). Notably, at the time the California Legislature mimicked those federal definitions, trap and trace devices under federal law were tied, exclusively, to telephone lines. *See, e.g.*, *In re Application of U.S. for an Order Authorizing the Use of a Cellular Telephone Digital Analyzer* (C.D. Cal. 1995) 885 F.Supp. 197, 200 ("it appears from the construction of related sections of the statutes governing trap and trace devices that they include only devices that are attached to a telephone line.").

***device is to be attached*….”), at 11 (explaining that a pen register allows law enforcement to record all outgoing numbers from a telephone line, and that a trap and trace device allows the recording of all incoming phone numbers) (emphasis added).

Plaintiffs’ contention that Defendants’ SDK constitutes a trap and trace device or pen register is undermined by the absence of its use in connection with a telephone line. (*See generally* SAC.) Thus, CIPA’s trap and trace/pen register provisions have no application.

**5. Plaintiffs Lack Statutory Standing to Assert a CDAFA Violation**

To maintain a CDAFA claim, an individual must “suffer damage or loss by reason of a violation” of the penal statute. Cal. Penal Code § 502(e)(1). Plaintiffs claim they were harmed by the supposed loss of control over their “personally identifiable information” and ability to be compensated for such information. (SAC ¶¶ 22, 29, 41, 208.) But Plaintiffs lack an inherent property interest in their personal information. *See Low*, *supra*, 900 F.Supp.2d at 1030; *In re iPhone Application Litig.*, 844 F.Supp.2d at 1074-75. Moreover, Plaintiffs do not plausibly assert how they’ve been deprived of control of their personal data. (*See generally* SAC.) In any event, the loss of right to control one’s data does not give rise to “damage or loss” under the CDAFA. *Lineberry v. AddShopper, Inc.*, Case No. 23-cv-01996-VC, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (dismissing CDAFA claim that failed to explain whether individual could still sell her data if defendant already possessed it “nor how the value of a person’s data decreases when their data is misappropriated”); *Hernandez-Silva v. Infrastructure, Inc.*, Case No. 2:25-cv-02711-SB-MAA, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025); *Doe v. Cty. of Santa Clara*, No. 23-CV-04411-WHO-2024 WL 3346257, at *9 (N.D. Cal. July 8, 2024).

Further, Plaintiffs lack standing because they do no allege that they actually intended to sell their information. (*See generally* SAC.) Generalized allegations that the value of one’s data is theoretically diminished do not pass muster. *Pruchnicki v. Envision Healthcare Corp.*, 845 F.

App'x 613, 614-15 (9th Cir. 2021) ("Although the studies cited by Pruchnicki establish that personal information may have value in general, Pruchnicki failed to adequately allege that *her* personal information actually lost value.") (emphasis in original); *Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033, 1047-48 (N.D. Cal. Mar. 3, 2025) (dismissing CDAFA claim in part because plaintiffs failed to plead "that they ever attempted or intended to participate in the market for" alleged intercepted data); *Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024)).

Finally, Defendants' alleged profits generated through their alleged conduct (SAC ¶¶ 22, 30, 42), do not establish that Plaintiffs suffered "damage or loss" as contemplated under the CDAFA. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767, 804 (N.D. Cal. 2019) ("Facebook may have gained money through its sharing or use of the plaintiffs' information, but that's different from saying the plaintiffs lost money."); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933074, at *6 (N.D. Cal. June 9, 2023).

**6. <u>Plaintiffs' Equitable Relief Claims Should Be Dismissed</u>**

Because unjust enrichment and injunctive relief are remedies, and not independent causes of action, Plaintiffs' equitable relief claims must be dismissed. "State and federal courts have consistently dismissed stand-alone claims for unjust enrichment." *Perez v. Romantix Online, Inc.*, No. 25-CV-02465-NW, 2025 WL 3085786, at *4 (N.D. Cal. Oct. 27, 2025) (internal quotation marks and citation omitted). Accordingly, Plaintiffs' unjust enrichment claim fails. *See id.*; *Low*, *supra*, 900 F.Supp.2d at 1031. Plaintiffs' injunctive relief claim fares no better "because California law does not permit a standalone claim for injunctive relief." *DellaSalla, supra*, 2025 WL 3034069, at *6 (internal quotation marks and citation omitted); *see also Brewer v. Superior Ct. of California, Cty. of Los Angeles*, Case No. 2:25-04362-TJH (ADS), 2025 WL 3070482, at *4 (C.D. Cal. Sept. 29, 2025), *report and recommendation adopted*, 2025 WL

3068167 (C.D. Cal. Oct. 31, 2025) (injunctive relief claim is "not a standalone cause of action").

Plaintiffs also fail to establish the absence of an adequate remedy at law. "To obtain any equitable relief in federal court, a plaintiff must allege that they lack an adequate remedy at law." *Hubbard*, 2024 WL 3302066, at *4 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Where the relief sought is fundamentally economic in nature, claims for equitable relief fail. *See In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014), *order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014) ("where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action") (citation omitted).

While the SAC alleges the absence of an adequate remedy at law, Plaintiffs seek compensatory damages on the very same underlying conduct. (*Compare* SAC ¶¶ 178, 189, 201, *with* SAC ¶¶ 165, 202, 215.) Further, Plaintiffs' claim for equitable disgorgement of profits (SAC ¶ 165, 222), does not render any available legal remedy as inadequate. *See Hubbard*, *supra*, 2024 WL 3302066, at *6 ("That Defendants earned profits in the process of [misappropriating information] renders neither damages for the harm a per se inadequate legal remedy nor the earning of those profits a distinct harm for which Plaintiffs may also recover.").

### B. Plaintiffs' Nationwide Class Allegations Should Be Stricken

Plaintiffs purport to assert nationwide class claims under the California Constitution (Count II), CIPA (Counts III-V), and CDAFA (Count VI). (SAC ¶¶ 135, 143-44, 158-215.) But those California laws are intended to protect exclusively California citizens, and do not apply extraterritorially to non-California residents. Thus, Plaintiffs' nationwide class allegations must be excised. Further, Plaintiffs' putative nationwide class allegations violate Rule 23's

commonality and superiority requirements because each class member will be governed by the common law of the state in which he or she resides, and not uniformly by California law.[5]

### 1. Applicable Legal Standard

Rule 12(f) authorizes the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In the class action context, under Federal Rule of Civil Procedure 23(d)(1)(D), the Court is vested "with the power to 'require that the pleadings be amended to eliminate allegations about representation of absent persons....'" *Grant v. New York Times Co.*, 329 F.R.D. 27, 31 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 23(d)(1)(D)). "'Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim.'" *Sanders v. Apple Inc.*, 672 F.Supp.2d 987, 990 (N.D. Cal. 2009) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982)); *Borgese v. Baby Brezza Enters. LLC*, 2021 WL 634722, at *4 (S.D.N.Y. Feb. 18, 2021) (class allegations may be stricken where "it is clear from the pleadings that the certification requirements cannot be met").

If a putative class claim cannot proceed, a motion to strike class allegations is appropriate. *See Carovillano v. Sirius XM Radio Inc.*, 23 Civ. 4723 (PAE), 2024 WL 3460040, at *6 (S.D.N.Y. July 18, 2024) (Rule 23(d) "permits courts to order deletion of portions [of] a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portions of those claims….") (internal quotation marks and citation omitted); *Kassman v.*

[5] California's choice-of-law rules govern the instant analysis. "Transfers under [28 U.S.C.] § 1404(a) by a court that has jurisdiction are adjudicated in the transferee state under the law of the transferor state." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 154 (2d Cir. 2019); *see Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–97 (1941). Because California's choice-of-law rules mandate that each putative class member's claim is governed by the "laws of the jurisdiction in which the transaction took place," the "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594, 596 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

*KPMG LLP*, 925 F.Supp.2d 453, 462 (S.D.N.Y. 2013). This is particularly so when plaintiffs maintain nationwide class claims under laws that do not apply extraterritorially and there is material divergence among applicable states' common law. *See, e.g.*, *Kassman*, 925 F.Supp.2d at 469 (striking nationwide putative class claims under New state and city employment laws "[g]iven the presumption against extraterritoriality" and because "th[ose] statute[s] do not apply to people who live and work outside of New York State"); *Daly v. Glanbia Performance Nutrition, Inc.*, Case No. 23 C 933, 2023 WL 5647232, at *2-4 (N.D. Ill. Aug. 31, 2023) (striking nationwide class allegations because of "several material differences among various states' common-law fraud and unjust enrichment laws").[6] Here, the California laws that Plaintiffs seek to invoke do not apply extraterritorially to a nationwide class, and Plaintiffs' California common law claims cannot be maintained on a nationwide basis.

**2. <u>Non-California Putative Class Members Cannot Invoke the California Constitution, CIPA, and CDAFA</u>**

The California Constitution and the California privacy statutes at issue do not apply extraterritorially. Consequently, a nationwide class cannot maintain such claims.

The California Constitution protects the privacy rights of California citizens only. *See People v. Martinez*, 88 Cal.App.4th 465, 474 (2001) ("Section 1 … ***protects Californians*** against invasions of privacy by nongovernmental as well as governmental parties.") (internal quotation marks and citation omitted) (emphasis added); *Henderson v. Chicago Cubs Baseball Club, LLC*, 2018 WL 3326682, at *1 (C.D. Cal. May 24, 2018) ("If none of the scouts whose privacy Defendant seeks to protect are California residents, then the California [constitutional] right of privacy would not apply to them.").

[6] *See also Glass v. Tradesmen Int'l, LLC*, 2020 WL 820655, at *10 (N.D. Ohio Feb. 19, 2020) ("Courts have stricken class allegations when a nationwide class is asserted with respect to claims under the laws of a single state that have no extraterritorial effect."); *Cotter v. Lyft, Inc.*, 60 F.Supp.3d 1059, 1063-66 (N.D. Cal. 2014).

"A California statute applies to conduct outside of California only if that 'intention is clearly expressed or reasonable to be inferred 'from the language of the act or from its purpose, subject matter or history.'" *DellaSalla*, *supra*, 2025 WL 3034069, at *3 (quoting *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)); *see also Lineberry*, *supra*, 2025 WL 551864, at *3. "However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state … unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan*, 51 Cal.4th at 1207.

Here, "CIPA and CDAFA both contain language demonstrating the legislature's intent for the statutes not to apply outside of California." *DellaSalla*, 2025 WL 3034069, at *3; *see also Doe v. Kaiser Foundation Health Plan Inc.*, Case No. 23-cv-02865-EMC, 2024 WL 1589982, at *12 (N.D. Cal. Apr. 11, 2024) (highlighting that "CIPA does contain express geographical limitations"). CIPA's "Legislative Declaration and Intent" preamble explicitly provides that CIPA "intends to protect the right of privacy ***of the people of this state***." Cal. Penal Code § 630 (emphasis added). Similarly, the California Legislature enacted CDAFA to ensure "the protection of the privacy of individuals … and others ***within this state*** that lawfully utilize … computers, computer systems, and data." Cal. Penal Code § 502(a) (emphasis added).

Plaintiffs seek to represent two nationwide classes whose assigned mParticle IDs, third-party internet communications, or personally identifiable information were allegedly intercepted. (SAC ¶ 135.) But Plaintiffs concede that any purported interception under the California Constitution, CIPA, or CDAFA necessarily must occur in California. (*See, e.g.*, SAC ¶ 171 ("Plaintiffs are based ***in California, where mParticle intercepted their personally identifiable information and private communications***") (emphasis added).)

Conversely, the purported interception of non-California residents' data would have necessarily occurred through their devices in their respective places of residence outside California. (SAC ¶¶ 70, 83 (IDSync software used on individuals' devices), ¶ 207 (alleging violation of CDAFA based on Defendants' purported "access[] and us[e] without permission [of] Plaintiffs' and Class Members' devices….").) Because any allegedly actionable conduct occurred, if at all, where putative class members' devices are located, non-California residents cannot invoke the California Constitution, CIPA, or CDAFA.

Plaintiffs' conclusory statement that "California law applies to every Class Member's claims" because "mParticle conducts substantial business in California, including the activities giving rise to Plaintiffs' and Class Members' claims" does not alter this outcome. (SAC ¶ 143.) Plaintiffs' parroting of jurisdictional standards does not justify application of California law on a putative nationwide basis. *DellaSalla*, 2025 WL 3034069, at *3; *Lineberry*, *supra*, 2025 WL 551864, at *3; *Kaiser Foundation Health Plan Inc.*, 2024 WL 1589982, at *12.

Further, Plaintiffs' isolated allegation that mParticle maintains an office in California is an irrelevant red herring. As Plaintiffs concede, Defendants are Delaware corporate entities with their principal places of business in New York. (SAC ¶¶ 43, 50, 61-62.) Other than an empty passing reference to mParticle's supposed office in California (SAC ¶ 143), the SAC is otherwise silent as to any conduct by Defendants occurring in California. (*See generally*, SAC.) In any event, even if Defendants maintained a minimal presence in California, that does not justify the blanket application of California law. *See Kaiser Foundation Health Plan Inc.*, 2024 WL 1589982, at 13 (dismissing CIPA claim and holding that "California does not have a predominant interest simply because Kaiser is based in California" because "only a California Plaintiff can bring a CIPA claim"); *Jonczyk v. First Nat'l Capital Corp.*, No. SACV 13-959-JLS

(AGRx) 2014 WL 1689281, at *4 (C.D. Cal. Jan. 22, 2014) (applying Missouri law to wiretapping claims brought by Missouri resident against California corporation).

The interests of putative class members' home states outweigh California's interest in having their own law applied. *Kaiser Foundation Health Plan Inc.*, 2024 WL 1589982, at *12 ("Because wiretapping statutes are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer."); *James v. Walt Disney Co.*, 701 F.Supp.3d 942, 963-64 (N.D. Cal. Nov. 8, 2023) (striking nationwide class allegations because of material differences between CIPA and other states' wiretapping statutes); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015). Because non-California putative class members cannot invoke the California Constitution, CIPA and CDAFA, Plaintiffs' nationwide class allegations fail.

**3. Non-California Putative Class Members Cannot Invoke California Law**

No single state's laws can apply to all putative class members' alleged common law claims. Rather, the disparate substantive law of the state in which each putative class members resides must apply. "[T]he class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." *Mazza*, *supra*, 666 F.3d at 589. If this is met, the Court determines whether the interests of other states outweigh those of California by examining (1) whether the relevant law of each affected state differs; (2) whether those differences are material; and (3) if so, which state has a greater interest in application of its laws. *Id.* at 589–90.

**i. Material Variance Among State Common Law Exists**

Here, putative nationwide class members' claims are governed by the laws of their respective home states given the state-by-state divergence in treatment of unjust enrichment, injunctive relief, and intrusion upon seclusion claims.

First, it is well settled under California law that "the elements necessary to establish a claim for unjust enrichment [] vary materially from state to state." *Mazza*, 666 F.3d at 591; *Hageman v. Hyundai Motor Am.*, 2024 WL 694378, at *4 (C.D. Cal. Jan. 5, 2024) (striking nationwide class unjust enrichment claim). "It is hard to imagine a clearer directive from [the Ninth] Circuit on this issue." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015). In short, the law on unjust enrichment differs markedly. *See supra*, Section (III)(A)(5).[7]

Similarly, injunctive relief claims vary significantly from state to state. First, a putative nationwide claim under California law is not viable given that injunctive relief is not a standalone cause of action. *See supra* Section (III)(A)(6). Further, some states require courts to weigh the public interest in a proposed injunction, while others do not. *Compare Huynh v. Blanchard*, 694 S.W.3d 648, 688 (Tex. 2024) (public interest and balance of hardships required under Texas law), *Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 647 (2003) (injunction will not adversely affect the public interest under Pennsylvania law), *with People ex rel. Klaeren v. Vill. of Lisle*, 202 Ill. 2d 164, 177 (2002) (no public interest factor).

Plaintiffs' intrusion upon seclusion claim presents similar disparities. For example, neither New York nor Virginia even recognize common law privacy torts. *See Barbash v. STX Financing, LLC*, 2020 WL 6586155, at *2 (S.D.N.Y. Nov. 10, 2020) ("Unlike other jurisdictions, New York does not recognize a common-law right of privacy…..") (internal quotation marks and citation omitted); *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021). Even where intrusion upon seclusion is recognized, the standards for finding actionable conduct differ. While some states require an alleged intrusion to be

[7] *See also Tupper v. Roan*, 349 Or. 211, 223 (Or. 2010) (unjust enrichment under Oregon law does not require illegal conduct, but an "element of wrongfulness"); *Cruz v. McAneney*, 31 A.D. 54, 59 (2d Dept. 2006) (explaining that unjust enrichment under New York law "does not require the performance of any wrongful act.") (citation omitted).

"substantial," others do not. *Compare Cornelius v. Markle Investigations, Inc.*, 2022 WL 620616, at *3 (Conn. Super. Ct. Feb. 1, 2022), *aff'd*, 220 Conn. App. 135, 297 A.3d 248 (2023) (explaining that Connecticut law requires interference with the plaintiff's seclusion to be substantial), *Shaner v. UPMC Susquehanna*, 2020 WL 1460717, at *2 (Pa. Super. Ct. Mar. 24, 2020) (same), *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 745 (Minn. Ct. App. 2001) (same), *with Taus v. Loftus*, 151 P.3d 1185, 1212 (2007); *Isaac v. Politico LLC*, 2025 WL 2437093, at *12 (Del. Aug. 25, 2025); *Busse v. Motorola, Inc.*, 813 N.E.2d 1013, 1017 (2004).

**ii. Putative Class Members' Home States Have An Interest In Applying Their Laws**

Each state "has an interest in "being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Mazza*, *supra*, 666 F.3d at 592–93; *see also Frezza v. Google Inc.*, 2013 WL 1736788, at *7 (N.D.Cal. Apr. 22, 2013) (a state has "an interest in being able to delineate the appropriate standard of liability and the scope of recovery based on its understanding of the balance between the interests of individuals and corporate entities operating within its territory."). This concern applies with equal—if not more—force in the online privacy context. *See Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *13 (finding that each state has an interest in "protect[ing] its residents' privacy interests"); *In re Yahoo Mail Litig.*, 308 F.R.D. at 603 (finding that all fifty states had an interest in applying their own wiretapping laws). Thus, putative class members' home states have a superior interest in applying their respective laws.

**iii. States' Interests Would be Impaired by Application of California Law**

Finally, the Court must "determine which state's interest would be more impaired if its policy was subordinated to the policy of the other state." *Mazza*, 666 F.3d at 590. The test "is

not intended to weigh the conflicting governmental interests in the sense of determining which conflicting law manifested the better or the worthier social policy on the specific issue.'" *Mazza*, 666 F.3d at 593 (internal quotation marks and citation omitted). Rather, "[t]he test recognizes the importance of our most basic concepts of federalism, emphasizing the appropriate scope of conflicting state policies, not evaluating their underlying wisdom." *Id.* It is well settled that "each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id.* "Conversely, California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 594.

Because privacy laws "are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer." *Kaiser Foundation Health Plan Inc.*, 2024 WL 1589982, at *13; *Jonczyk*, 2014 WL 1689281, at *4; *Walt Disney Co.*, 701 F.Supp.3d 942, 963-64 (N.D. Cal. Nov. 8, 2023). For these reasons, each putative class member's purported common law claims should necessarily be governed by the laws of their home state.

## IV. CONCLUSION

Defendants respectfully request that the Court (i) dismiss Plaintiffs' Second Amended Complaint in its entirety with prejudice, (ii) strike Plaintiffs' nationwide class allegations, and (iii) grant such other and further relief as the Court deems just and proper.

Dated: December 3, 2025

COZEN O'CONNOR

By: /s/ Matthew E. Lewitz
Matthew E. Lewitz
COZEN O'CONNOR
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401
Telephone: 213-892-7937
Facsimile: 310-394-4700
Email: mlewitz@cozen.com

Erin Bolan Hines (admitted *Pro Hac Vice*)
COZEN O'CONNOR
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: 312-474-4490
Facsimile: 312-300-5645
Email: ebolanhines@cozen.com

*Attorneys for Defendants MParticle, Inc. and Rokt US Corp.*

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(C)**

Pursuant to Rule 7.1(C) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned attorney of record hereby certifies that the total number of words contained in the foregoing memorandum of law, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 7,853 words, and therefore complies with the requirement that moving memoranda contain no more than 8,750 words.

Dated: Santa Monica, California
December 3, 2025

By: ____________________
Matthew E. Lewitz

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of December, 2025, I caused a true and correct copy of Defendants' **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MPARTICLE, INC. AND ROKT US CORP.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND STRIKE NATIONWIDE CLASS ALLEGATIONS** to be electronically filed and that this document is available for viewing and downloading from the Court's CM/ECF system, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system. I further certify that a copy of the foregoing document was served via email on the individuals listed below:

Heather Lopez
Milberg Coleman Bryson Phillips Grossman PLLC
280 S. Beverly Drive
Beverly Hills, CA 90212
*hlopez@milberg.com*
*Attorneys for Plaintiffs*

Gary Michael Klinger
William J. Edelman
Milberg Coleman Bryson Philips Grossman PLLC
227 West Monroe Street, Suite 2100
Chicago, IL 60606
*gklinger@milberg.com*
*wedelman@milberg.com*
*Attorneys for Plaintiffs*

Dated: Santa Monica, California
December 3, 2025

Matthew E. Lewitz