**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETER C. HAYWARD, KELLY GARCIA, and MATTHEW YBARRA, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MPARTICLE, INC. and ROKT US CORP.,

Defendants.

Case No. 1:25-cv-08173-PAE

Hon. Paul A. Engelmayer

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 3

IV. ARGUMENT ..... 4

A. Plaintiffs Have Sufficiently Alleged Injury-in-Fact for Article III Standing ..... 4

B. Plaintiffs Plausibly Alleged Privacy Claims ..... 6

C. The Rule of Lenity Does Not Apply to Plaintiffs' CIPA Claims ..... 10

D. Plaintiffs' CIPA § 631 Claim Should Be Sustained ..... 11

E. Plaintiffs' CIPA § 632 Claim Should Be Sustained ..... 12

F. Plaintiffs' CIPA § 638.51 Claim Should Be Sustained ..... 13

G. Plaintiffs' CDAFA Claim Should Be Sustained ..... 14

H. Plaintiffs' Unjust Enrichment and Injunctive Relief Claims Should Be Sustained ..... 17

I. Defendants' Motion to Strike Should Be Rejected ..... 19

a. The Motion to Strike is Improper at this Stage ..... 19

b. Extraterritoriality Does Not Bar CDAFA or CIPA Claims ..... 21

c. Choice-of-Law Variations Are a Premature Basis to Strike Class Allegations at the Pleading Stage ..... 23

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Cases


*Bales v. Sierra Trading Post, Inc.*,
No. 13CV1894, 2013 WL 6244529 (S.D. Cal. Dec. 3, 2013) ..... 12

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ..... 17

*Borgese v. Baby Brezza Enters. LLC*,
No. 20 CIV. 1180, 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) ..... 21

*Bose v. Interclick, Inc.*,
No. 10 CIV. 9183, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ..... 5

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ..... 18

*Brown v. Google LLC,*
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 4, 12, 16

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 16

*Carolus v. Nexstar Media Inc.*,
No. 24-cv-07790, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ..... 6, 9

*Carovillano v. Sirius XM Radio Inc.*,
23 Civ. 4723, 2024 WL 3460040 (S.D.N.Y. July 18, 2024) ..... 20

*Cherkin v. PowerSchool Holdings, Inc.*,
24-CV-02706, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ..... 22

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) ..... 14

*Cotter v. Lyft, Inc.*,
60 F.Supp.3d 1059 (N.D. Cal. 2014) ..... 21

*Crano v. Sojern, Inc.*,
No. 3:25-CV-02600, 2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ..... 11

*Cruz v. McAneney*,
31 A.D. 54 (2d Dept. 2006) ..... 24

*Daly v. Glanbia Performance Nutrition, Inc.*,
Case No. 23 C 933, 2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) .......... 21

*DellaSalla v. Samba TV, In*c.,
Case No. 3:25-cv-03470, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 9, 22

*Doe I v. Google LLC*,
No. 23-CV-02431, 2025 WL 1616720 (N.D. Cal. June 6, 2025) .......... 10

*Doe v. Cty. of Santa Cla*ra,
No. 23-CV-0441, 2024 WL 3346257 n.7 (N.D. Cal. July 8, 2024) .......... 16

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 10

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244, 12N.D. Cal. 2024) .......... 21, 23

*Doe v. Kaiser Foundation Health Plan Inc.*,
No. 23-cv-02865, 2024 WL 1589982, (N.D. Cal. Apr. 11, 2024) .......... 22, 23

*Doe v. Meta Platforms, In*c.,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 18

*Erceg v. LendingClub Corp.*,
475 F. Supp. 3d 1071, .D. Cal. 2020) .......... 22

*ESG Cap. Partners, LP v. Strat*os,
828 F.3d 1023 (9th Cir. 2016) .......... 17

*Fregosa v. Mashable, In*c.,
No. 25-CV-01094, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) .......... 13

*Frezza v Google Inc.*,
No. 5:12-CV-00237, 2013 WL 1736788, (N.D. Cal. Apr. 22, 2013) .......... 25

*Gabrielli v. Insider, In*c.,
No. 24-cv-01566, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 5

*Gabrielli v. Motorola Mobility LLC,*
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. Jul. 14, 2025) .......... 6, 8, 14

*Galper v. JP Morgan Chase Bank, N*.A.,
802 F.3d 437 (2d Cir. 2015) .......... 4

*Gialamas v. Deacon,*
2023 IL App (1st) 221400-U, 2023 WL 5444592, (9 App. Ctr. of Ill., Aug. 22, 2023)............ 24

*Glass v. Tradesmen Int'l, LLC,*
No. 5:19-CV-01331, 2020 WL 820655 (N.D. Ohio Feb. 19, 2020) .................................. 20, 21

*Grant v. New York Times Co.,*
329 F.R.D. 27 (S.D.N.Y. 2018) ............................................................................................ 20

*Greene v. Gerber Prods. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) ..................................................................................... 19

*Greenley v. Kochava, Inc*.,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .................................................................................. 4

*Griffith v. TikTok, Inc*.,
697 F. Supp. 3d 963 (C.D. Cal. 2023)........................................................................ 7, 12, 13, 16

*Griffith v. TikTok, Inc*.,
No. 5:23-CV-00964, 2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ......................................... 4

*Gutierrez v. Lemonade, Inc*.,
No. 21-CV-7070, 2022 WL 3214852 (S.D.N.Y. Aug. 9, 2022) ............................................... 19

*Harrill v. Emanuel Med. Ctr.*,
No. 2:23-cv-01672, 2025 WL 1635428 (E.D. Cal. June 9, 2025) ............................................. 8

*Hazel v. Prudential Fin., Inc*.,
No. 22-CV-07465, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ............................................ 15

*Hubbard v. Google LLC*,
No. 19-CV-07016, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .................................. 9, 15, 19

*I.C. v. Zynga, Inc*.,
600 F.Supp.3d 1034 (N.D. Cal. 2022) ..................................................................................... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ............................................................................................... 7, 8

*In re Ford Tailgate Litig*.,
No.11-CV-2953, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) ............................................ 19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................... 8

*In re Google Inc.*,
No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................................ 10

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................................................ 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................................... 9

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ...................................................................................... 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................................... 13

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ................................................................................ 17, 18

*In re Meta Pixel Tax Filing Cases*,
No. 22-CV-07557, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) ........................................... 13

*In re Yahoo Mail Litig.*,
308 F.R.D. 577, (N.D. Cal. 2015) ........................................................................................... 23

*Ironforge.com v. Paychex, Inc.*,
747 F. Supp. 2d 384 (W.D.N.Y. 2010) ..................................................................................... 19

*James v. Walt Disney Co.*,
701 F.Supp.3d 942, (N.D. Cal. Nov. 8, 2023) .......................................................................... 23

*Props. Grp. B, LLC v. Pritzker,*
185 N.E.3d 780, 2021 IL App (3d) 200305 (2021).................................................................. 24

*Jonczyk v. First Nat. Cap. Corp.,*
No. SACV 13-959, 2014 WL 1689281, (C.D. Cal. Jan. 22, 2014).......................................... 22

*Jones v. Peloton Interactive, Inc.*,
No. 23-CV-1082, 2024 WL 3315989 (S.D. Cal. July 5, 2024)................................................ 12

*Kassman v. KPMG LLP*,
925 F.Supp.2d 453 (S.D.N.Y. 2013) ........................................................................................ 20

*Keilholtz v. Lennox Hearth Prods. Inc.*,
268 F.R.D. 330, 3(N.D. Cal. 2010) ......................................................................................... 24

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877, (N.D. Cal. 2022) ........................................................................ 23

*Khorrami v. Lexmark Int'l Inc*.,
No. CV 07-01671, 2007 WL 8031909 (C.D. Cal. Sept. 13, 2007).......................................... 20

*King v. Hard Rock Café Int'l (USA), Inc*.,
No. 2:24-CV-01119, 2025 WL 1635419 (E.D. Cal. June 9, 2025) ............................................ 7

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-c-v01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ............................................... 6

*L.B. v. LinkedIn Corp*.,
No. 5:24-CV-06832, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)......................................... 11

*Lau v. Gen Digital Inc*.,
No. 22-CV-08981, 2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........................................... 8, 9

*Lesh v. Cable News Network, Inc*.,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ............................................................................... 13

*Lineberry v. AddShopper, Inc*.,
No. 23-CV-01996, 2025 WL 551864 (N.D. Cal. Feb. 19, 2025)....................................... 16, 22

*Low v. LinkedIn Corp*.,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................................ 9, 15

*M. H. v. Done Glob. Inc.*,
No. 24-CV-03040, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025).............................................. 12

*Mason v. Reed's Inc*.,
515 F. Supp. 3d 135 (S.D.N.Y. 2021) ............................................................................. 20

*Matera v. Google Inc.,*
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016).................................... 6

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581, (9th Cir. 2012)........................................................................................ 25

*Milstead v. Gen. Motors LLC*,
No. 21-CV-06338, 2023 WL 4410502 (N.D. Cal. July 6, 2023) ............................................. 18

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .................................... 13, 14

*Mitchener v. Talkspace Network LLC*,
No. 2:24-cv-07067, 2025 WL 1822801 (C.D. Cal. June 27, 2025) .......... 9

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 14

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075, (9th Cir. 2018). .......... 23

*Perez v. Romantix Online, Inc*.,
No. 25-CV-02465, 2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) .......... 17

*Popa v. Microsoft Corp*.,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 5

*Posadas v. Goodyear Tire & Rubber Co.*,
No. 23-CV-0402, 2024 WL 5114133 (S.D. Cal. Dec. 13, 2024) .......... 7

*Price v. Converse, Inc*.,
2:24-cv-08091, 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) .......... 6

*Pruchnicki v. Envision Healthcare Corp*.,
845 F. App'x 613 (9th Cir. 2021) .......... 16

*Riganian v. LiveRamp Holdings, Inc*.,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... passim

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 15

*Rodriguez v. Google LLC,*
No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) .......... 20

*Romero v. Securus Techs., Inc*.,
331 F.R.D. 391 (S.D. Cal. 2018) .......... 20

*Sanders v. Apple Inc*.,
672 F.Supp.2d 987 (N.D. Cal. 2009) .......... 21

*Shah v. Capital One Fin. Corp*.,
768 F.Supp.3d 1033 (N.D. Cal. Mar. 3, 2025) .......... 16

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. Oct. 21, 2024) .......... 14

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 7, 9

*Smith v. Maryland*,
442 U.S. 735(1979) ........ 14

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 12

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ........ 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 18

*Staubitz v. Arthrex, Inc.*,
No. 1:23-CV-6004, 2024 WL 4350669 (E.D.N.Y. Sept. 29, 2024) ........ 20

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ........ 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4

*Tupper v. Roan*,
349 Or. 211 (Or. 2010) ........ 24

*Turner v. Apple, Inc.*,
No. 5:20-CV-07495, 2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ........ 18

*Turner v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 15

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) ........ 14

*United States v. Zhang*,
135 F.4th 44 (2d Cir. 2025) ........ 10

*Vaccaro v. Protective Asset Prot., Inc.*,
No. 2:25-CV-08918, 2025 WL 3482170, (C.D. Cal. Dec. 1, 2025) ........ 22

*Volfman v. Miss Du's Tea Shop, Inc.*,
No. 24-CV-2973, 2025 WL 1852302 (S.D.N.Y. Apr. 18, 2025) ........ 4

*Yoon v. Meta Platforms, Inc.*,
No. 24-CV-02612, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ..... 13

*Ziegler v. WellPet LLC*,
526 F. Supp. 3d 652 (N.D. Cal. 2021) ..... 18

Statutes

Cal. Penal Code § 502(e)(1) ..... 15

Other Authorities

Assembly Bill 929 ..... 14

# I. <u>INTRODUCTION</u>

While this action now proceeds in New York, the "change of scenery" (Defendants' Motion to Dismiss, ECF No. 62 ("Mot.") at 1) does not change the indisputable fact that Defendants have secretly harvested vast amounts of private data from millions of unsuspecting individuals. Faced with a class action complaint that seeks to hold Defendants accountable for their rampant privacy violations, Defendants flounder to come up with any basis to seek dismissal, ranging from repeated misclassification of their conduct as "innocuous," "basic," and "routine," to seeking the extreme (and rare) relief of striking Plaintiffs' class allegations altogether. But these buzzwords cannot hide the absence of a legitimate basis to dismiss Plaintiffs' claims or strike the class allegations.

Take, for instance, Defendants' claim that Plaintiffs lack both standing and a reasonable expectation of privacy. Beyond merely *calling* their conduct "routine" and the identifiable private data they intercepted as "innocuous[,]" Defendants do not (and cannot) cite any authority supporting their contention that the mass collection of names, email addresses, device and user identifiers, and private online interactions (like financial transactions and video-viewing data) is not privacy invasive. Defendants' attempt to dismiss Plaintiffs' CIPA claims crumbles for the same reason, ignoring decades of case law applying CIPA on nearly identical facts, they latch on to a singular outlier decision that—if followed—would eviscerate any application of the statute to even the most traditional forms of wiretapping. Their challenges to Plaintiffs' CDAFA and unjust enrichment claims follow the same pattern, ignoring legal precedent and the actual facts alleged in favor of string cites to cases that have no relevance here.

Perhaps most telling is Defendants' attempt to strike Plaintiffs' class allegations. Disregarding that courts only grant such requests in the most extreme cases, Defendants hinge their attack on a woefully underdeveloped choice of law argument that asks this Court to assume

hypothetical differences in state laws will doom any future attempt at class certification. But Defendants' inability to substantiate each element of this argument speaks volumes, confirming not just that the requested relief is inappropriate, but also premature. Any decisions on class composition or choice of law should be decided after discovery and on a fully developed record.

## II. FACTUAL BACKGROUND

Defendants have spent years compiling and monetizing unique, individual profiles on millions of consumers that reveal, not just their identity, but their private interactions across thousands of websites and apps. ¶¶ 1-8.[1] Defendants collect this data through their SDKs, APIs, and "IDSync" technology, which secretly run in the background of websites and apps. ¶¶ 69-82. The data Defendants admit they intercept and use in "real time" (Mot. at 2) is anything but "routine" as it contains every piece of data that can identify an individual, including a person's name, email addresses, phone numbers, device and user identifiers, IP addresses, and customer IDs (collectively, "PII"). ¶¶ 4, 71, 77-78 (explaining Defendants also obtain age, name, gender, phone number, and address). But Defendants do not stop there, purposefully sweeping in each individual's private interactions on these websites and apps, including their searches, behaviors, and any other activity occurring on these sites. ¶¶ 5, 19, 36, 39, 79 (explaining Defendants intercept private activity, including video-viewing data and financial transactions). All this data feeds directly into the user profiles Defendants maintain on unsuspecting consumers, which are anchored by Defendants' own persistent identifier, the mParticle ID. ¶¶ 70-80.

This system of constantly tracking individuals—including by further disguising their technology through a "CNAME" (¶¶ 101-106)—allows Defendants to intentionally subvert privacy controls made available to individuals (e.g., resetting or changing device identifiers) and

[1] "¶" as used herein refers to Plaintiffs' Second Amended Class Action Complaint, ECF No. 52.

undermine broader privacy-preserving, industry-wide measures like "Do Not Track" and browser-level tracking protections. ¶¶ 6, 65–68, 80–82. Thus, regardless of whether a consumer switches phones, clears cookies, or changes certain identifiers, Defendants can still recognize and track that person and their private interactions at the user level. ¶¶ 69–75, 81–82.

Recognizing the value in having nearly limitless access to hordes of private data about individual consumers, Defendants make these profiles—which they further enrich with "predictive attributes"—available to customers to facilitate targeted advertising, so long as they pay for it. ¶¶ 84-91. For example, their customers can advertise directly with Defendants (thanks to mParticle's lucrative merger with Rokt Inc.), or by having Defendants forward their enriched profiles directly to other large advertisers, including Meta, Google, and Adobe. ¶¶ 92-100.

Plaintiffs are three California consumers whose private, identifiable data was collected, harvested, and monetized by Defendants in California through this system. Each Plaintiff had (at least) their private financial transactions—and identifying information like their email addresses—intercepted by Defendants on the Venmo website or app. ¶¶ 18–20, 26–28, 38–40. Defendants also intercepted Plaintiffs Hayward and Ybarra's private and identifiable data from the Peacock and NBC apps, respectively, including their private video-viewing activity. ¶¶ 16–17, 35–37. Plaintiffs' identifiable, private interactions on these third-party platforms were added to the unique user profiles maintained and leveraged by Defendants for profit. ¶¶ 16–20, 27–28, 35–40, 79–80, 83–91. Plaintiffs had no way to block Defendants' hidden tracking tools from surreptitiously collecting their data, and no opportunity to consent to the interception, profiling, and monetization of their personal information and private communications. ¶¶ 21–22, 29–30, 41–42, 81, 107–116.

## III. <u>LEGAL STANDARD</u>

When a Rule 12(b)(1) motion is brought "at the pleading stage," the district court must

"take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *See Volfman v. Miss Du's Tea Shop, Inc.*, No. 24-CV-2973, 2025 WL 1852302, at *3 (S.D.N.Y. Apr. 18, 2025). To establish standing, a plaintiff need only show a concrete "injury in fact" that the "likely" to be caused by the defendant and is "redress[able.]" *Id.* Similarly, on a Rule 12(b)(6) motion, the court also "accept[s] as true" all facts and considers them "in the light most favorable" to the plaintiff, but to evaluate whether the complaint "sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

## IV. ARGUMENT

### A. Plaintiffs Have Sufficiently Alleged Injury-in-Fact for Article III Standing[2]

"[I]ntrusion upon seclusion" is a "concrete" harm sufficient to confer Article III standing. *See, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Defendants' interception of Plaintiffs' and Class Members' PII and their private searches, queries, and behaviors (e.g., video-viewing activity and financial transaction information) is the exact type of intrusion courts routinely find sufficient to confer Article III standing. *See Griffith v. TikTok, Inc.*, No. 5:23-CV-00964, 2023 WL 9019035, at *2-4 (C.D. Cal. Dec. 13, 2023) (finding standing where defendants collected "browsing data" including "financial information" and video-viewing history from third party websites); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (S.D. Cal. 2023) (similar). As is Defendants' use of this data to develop unique user profiles and facilitate targeted advertising. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 599 (9th Cir. 2020) (finding standing where company "tracked" consumers' "browsing histories" to create detailed "profiles"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 920, 923-25 (N.D. Cal. 2023) (standing established where the defendant "associates [users' browsing data] with their preexisting user profiles" to

---

[2] Defendants do not challenge the other elements of the Article III standing. *See* Mot. at 4-5.

deliver "better, more targeted, advertisements to users").

While Defendants classify their big-brother tactics as "basic" and "routine" (Mot. at 4), the law does not agree. Both the legislature—as evidenced by its passage of the Video Privacy Protection Act (VPPA) and Fair Credit Reporting Act (FCRA)—and courts in this forum and elsewhere have recognized that the unauthorized tracking of private data from unsuspecting consumers is privacy invasive. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087-88 (N.D. Cal. 2025) (recognizing "the tracking of individuals' activity across thousands of websites" is a highly offensive invasion of privacy); *Bose v. Interclick, Inc.*, No. 10 CIV. 9183, 2011 WL 4343517, at *1, 8-9 (S.D.N.Y. Aug. 17, 2011) (recognizing the interception of "browsing history information" and "unique identifiers" to create "behavioral profiles" as a "privacy invasion" sufficient to show "injury"). Defendants' own authority expressly acknowledges this. Mot. at 4 (citing *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *1-2, 5 (9th Cir. Aug. 26, 2025) (finding the collection of "pet-store preferences" is not privacy invasive but that certain data collection "*could* be offensive" if it involved "sensitive" information like "financial information") (emphasis in original); *id.* at *7 (explaining the Ninth Circuit has previously concluded that "*every* disclosure of an individual's 'personally identifiable information' and video-viewing history offends the [privacy] interests that the [VPPA] protects.") (emphasis in original)).

The cases Defendants cobbled together do not defeat this long-standing principle, as they were dismissed either because the allegations were too vague or because they involved *only* identifiers and device information—without "content"—from a singular website. Mot. at 4-5 (citing *Gabrielli v. Insider, Inc.*, No. 24-cv-01566, 2025 WL 522515, at *3-6 (S.D.N.Y. Feb. 18, 2025) (involving IP addresses from a singular website); *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225, 2025 WL 3064113, at *3-5 (S.D. Cal. Nov. 3, 2025) (involving IP address, email

address, and non-identifying browser metadata from a water filtration website); *Carolus v. Nexstar Media Inc.*, No. 24-cv-07790, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (finding vague references to "browser and device data" without more "specificity" insufficient for injury in fact); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-c-v01473, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (dismissing claims where plaintiffs failed to specify what "data" and "information" was collected besides IP addresses); *Price v. Converse, Inc.*, 2:24-cv-08091, 2025 WL 3295119, at *3 (C.D. Cal. Sept. 30, 2025) (finding allegations that "device and browser information" were collected were at "a high[] level of generality" and insufficient to establish standing)). These single-website cases are inapposite to Plaintiffs' robust allegations that Defendants track Plaintiffs and Class Members across the web and intercept and use their sensitive data in the process.

Defendants' separate claim that there is only a "theoretical" possibility that "Plaintiffs were subjected to targeted advertising" also does not defeat Plaintiffs' standing. Mot. at 5. Plaintiffs have standing regardless of whether they were ever served targeted advertisements because their privacy was intruded the moment Defendants collected their private data without their knowledge. *See Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("[D]epriving [the plaintiff] control of personal information regarding his digital activity and profile" is "sufficient to establish a concrete injury."). Any targeted advertisements served on Plaintiffs—which will be proven through discovery—are simply *additional* privacy harms for which Defendants should be held liable.[3]

**B. <u>Plaintiffs Plausibly Alleged Privacy Claims</u>**

In considering intrusion upon seclusion and invasion of privacy claims under the California

[3] In any event, Plaintiffs' allegations that Defendants used their data to target ads are taken as true on the pleadings. ¶¶ 178, 186-188, 224; *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *14 (N.D. Cal. Aug. 12, 2016) (accepting similar allegations "as true").

Constitution, courts consider whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *See Facebook Tracking*, 956 F.3d at 601 (internal citations omitted). Both requirements are satisfied here.

***Reasonable Expectation of Privacy.*** Consumers have a reasonable expectation not to be surreptitiously identified and profiled across the internet. *See Riganian*, 791 F. Supp. 3d at 1085-89 (holding a company that "generate[s] uniquely identifying profiles" from users' internet activity commits an intrusion upon seclusion); *Facebook Tracking*, 956 F.3d at 604 (same); *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 970-72 (C.D. Cal. 2023) (same). And consumers certainly have a reasonable expectation not to have their private information—like video-viewing data and financial transaction records—intercepted by a third-party interloper. *See Griffith,* 697 F. Supp. 3d at 970-71 (recognizing right to privacy in video-viewing data); *Silver v. Stripe Inc.*, No. 4:20-CV-08196, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (same for financial transactions).

Defendants' insistence that there is no right to privacy on the internet is inconsistent with the law. *See* Section IV.E. And the cases Defendants rely on are (again) readily distinguishable, involving either one-off data breaches or limited data collection from a singular, innocuous website that plainly are not comparable to Defendants' widespread tracking of consumers' private activity across the internet. *See* Mot. at 6-7 (citing *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012, 2024 WL 2060140, at *2-3 (S.D. Cal. May 8, 2024) (session replay technology on a singular website used to order pizza); *Posadas v. Goodyear Tire & Rubber Co.*, No. 23-CV-0402, 2024 WL 5114133, at *1, 7 (S.D. Cal. Dec. 13, 2024) (session replay technology on a singular website used to buy tires); *King v. Hard Rock Café Int'l (USA), Inc.*, No. 2:24-CV-01119, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (tracking only that plaintiff "browse[d] and book[ed] a Hard Rock hotel" on a singular website); *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1049 (N.D. Cal. 2022)

(involving a data breach)). Their reliance on *Harrill v. Emanuel Med. Ctr.*, No. 2:23-cv-01672, 2025 WL 1635428, at *6-7 (E.D. Cal. June 9, 2025) is also misplaced as, there, the plaintiff's allegations were deemed "dubious[ly]" "vague," something that is not an issue here in light of Plaintiffs' detailed allegations supported by actual testing. ¶¶ 18-19, 26-27, 35-36, 38-39.

Defendants' novel claim that Plaintiffs have no expectation of privacy because the mParticle ID—one mechanism it used to uniquely track Plaintiffs across the internet—is generated by mParticle itself also misses the mark. *See* Mot. at 7. Regardless of who created the mParticle ID, it is Defendants' interception and aggregation of Plaintiffs' private and identifiable data that violates privacy expectations. That Defendants made their *own* identifier to circumvent existing privacy protections merely makes the conduct *more* privacy invasive, not less.

***Highly Offensiveness.*** Whether a privacy intrusion is highly offensive is a "factually intensive . . . inquiry" on which "courts must be reluctant to reach a conclusion at the pleading stage." *See Gabrielli*, 2025 WL 1939957, at *10. Several Courts—including cases cited by Defendants—have found that the surreptitious tracking and profiling of users' private and identifiable online activity to be highly offensive. *Id.* (rejecting argument that the collection of IP addresses and browsing histories is "not highly offensive" as a matter of law); *Riganian*, 791 F. Supp. 3d at 1088-89 (same); *Facebook Tracking*, 956 F.3d at 606 (denying motion to dismiss because the "surreptitious data collection" on websites owned by companies other than the defendant is highly offensive); *see* Mot. at 7 (citing *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 830 (N.D. Cal. 2020) (noting the "surreptitious recording" of "a plaintiff's . . . activity [may] constitute an actionable intrusion")). That the data intercepted by Defendants involved inherently private information further confirms the offensiveness of Defendants' conduct. *See Lau v. Gen Digital Inc.*, No. 22-CV-08981, 2024 WL 1880161, at *2-4 (N.D. Cal. Apr. 3, 2024) (finding

collection of "video viewing histories" sufficiently offensive); *Silver*, 2021 WL 3191752, at *6 (same for financial information).

Defendants cannot circumvent this body of case law by relying on entirely different cases bearing no resemblance to the allegations against them. This is not a case about an entity consolidating data from its *own* web properties (Mot. at 7-8), like *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) and *Hubbard v. Google LLC*, No. 19-CV-07016, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024). Nor is it like the decade-old decision in *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012), involving solely LinkedIn profile URLs and LinkedIn IDs disclosed by LinkedIn, or the equally-old decision in *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1049 (N.D. Cal. 2012), in which plaintiffs sought to hold Apple liable for third-party software embedded in independently-owned apps. These cases share no similarities to the allegations against Defendants and plainly have no relevance here.

Defendants' separate suggestion that this case concerns solely the "capture of their IP addresses" (Mot. at 8) is just wrong. Mot. at 8; *see* Section II. Their reliance on cases limited to IP addresses merely underscores how fundamentally different—and far more offensive—the conduct at issue here is from what those courts addressed. *See* Mot. at 8 (citing *DellaSalla v. Samba TV, Inc.*, Case No. 3:25-cv-03470, 2025 WL 3034069, at *5 (N.D. Cal. Oct. 30, 2025) (finding disclosure of IP address, "without more," is not highly offensive); *Carolus*, 2025 WL 1338193, at *1 (similar); *Mitchener v. Talkspace Network LLC*, No. 2:24-cv-07067, 2025 WL 1822801, at *7-8 (C.D. Cal. June 27, 2025) (similar)).[4]

[4] IP addresses, when combined with other sensitive data similar to what is intercepted here, easily satisfy the highly offensiveness standard. *See Riganian*, 791 F. Supp. 3d at 1086-87.

### C. <u>The Rule of Lenity Does Not Apply to Plaintiffs' CIPA Claims</u>

The rule of lenity only applies if "after seizing everything from which aid can be derived, [a] [c]ourt can make no more than a guess" as to what the legislature intended. *See United States v. Zhang*, 135 F.4th 44, 54 (2d Cir. 2025). As discussed below (*see* Sections IV.D-F), courts have no issue applying the CIPA provisions or understanding their contours per the legislature's directive, such that the rule of lenity has no application here. *See Riganian*, 791 F. Supp. 3d at 1094 (explaining there is "no role for [the rule of lenity] here" where CIPA's "express language" contains no "egregious ambiguity and uncertainty").

While Defendants suggest that words like "read," "intercept," and "in transit" are "ill-suited" for "internet communications," they make no attempt to explain why these commonly used terms are somehow confusing or indecipherable. *See* Mot. at 9-10. This position, as well as the single outlier case *Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) (Chabria, J.),[5] by a single judge, that they rely on, stands in stark contrast to over a decade of case law applying CIPA to internet communications. *See In re Google Inc.*, No. 13-MD-02430, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (finding "the plain language of [CIPA] is broad enough to encompass email" as early as 2013); *see also* Sections IV.D-F.

But more fundamentally, the court's position in *Eating Recovery* —that under the rule of lenity "something more" than intercepting a communication with the immediate purpose of "learn[ing]" or "read[ing]" its contents is required to prevail on CIPA § 631 clause (2)-(4) claims—would render the entirety of these provisions unenforceable in *any context*. That is because, even in the most traditional example of alligator clips wrapped around a phone line, the wiretappers

[5] This case is also a sudden shift of position from Judge Chhabria's own ruling in *Doe I v. Google LLC*, No. 23-CV-02431, 2025 WL 1616720, at *3 (N.D. Cal. June 6, 2025), where he upheld plaintiffs' CIPA claims based on Google's interception of internet communications.

cannot "learn" or "read" the electrical impulses while they are transmitted across the wire, but only after they are captured (i.e., by the clips), converted to sound, and processed by their ears. Because the rule of lenity cannot be invoked in a manner that would fully nullify a statute passed by the legislature, this decision is not just an outlier but incompatible with the law.

### D. Plaintiffs' CIPA § 631 Claim Should Be Sustained

***CIPA § 631 Subsection (2).*** As alleged in the Complaint—and supported by actual testing—Defendants' technology immediately intercepts and learns Plaintiffs' identifying information and the content of their communications (e.g., video-viewing and financial transactions) while these communications occur in real time. ¶¶ 19, 27, 36, 39, 174. Nothing more is required to meet CIPA's "in transit" requirement. *Riganian*, 791 F. Supp. 3d at 1091-92 (finding similar allegations sufficient to allege "in transit" requirement). The cases Defendants cite highlight this, as they dismissed actions where these allegations were *lacking*. *See* Mot. at 11 (citing *L.B. v. LinkedIn Corp.*, No. 5:24-CV-06832, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing complaint because plaintiffs did "not explicitly allege" that communications were "intercepted" in "real time . . . in their complaints"); *Crano v. Sojern, Inc.*, No. 3:25-CV-02600, 2025 WL 2689267, at *7 (N.D. Cal. Sept. 19, 2025) (alleging that data was collected and then "*re-direct*[ed]" to the defendant ) (emphasis in original)).

Though Defendants try to distract from these allegations by noting that their *identity matching* occurs via a "multi-step process" (Mot. at 11), the first step in that process (as Defendants acknowledge) *is the interception* of matched data. ¶ 71; *see also* Mot. at 2 (Defendants admitting it acts on "customer data in *real time*") (emphasis added). Any subsequent "step[s]" *after* interception do not change that the initial interception occurs while that data was in transit.

***CIPA § 631 Subsections (3)-(4).*** Defendants' argument that Plaintiffs' claims under Section

631(3)-(4) fail because they have not alleged a predicate interception ignores these facts and fails for the same reason. Mot. at 11. Plaintiffs clearly allege a predicate violation (above), as well as that Defendants used this data and aided and abetted such violations to facilitate targeted advertising for profit. *See Jones v. Peloton Interactive, Inc.*, No. 23-CV-1082, 2024 WL 3315989, at *5 (S.D. Cal. July 5, 2024) (finding third prong established where the defendant "uses intercepted communications to improve . . . its proprietary machine learning software"); *M. H. v. Done Glob. Inc.*, No. 24-CV-03040, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (finding fourth prong established where the defendant "transmit[s] a user's website communications to third-party companies to facilitate ad retargeting").

**E. <u>Plaintiffs' CIPA § 632 Claim Should Be Sustained</u>**

CIPA § 632 prohibits any person from intentionally using a "recording device" to "record" or "eavesdrop" on a "confidential communication" without consent. CIPA § 632(a). Defendants only challenge the "confidential" element, arguing that Plaintiffs do not have an expectation of privacy in any communications occurring online. Mot. at 11-12. This argument fails for the reasons stated in Section IV.B; *see also Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 1085169, at *3, 5 (N.D. Cal. Apr. 4, 2025) (finding communications sufficiently confidential which involved "personally identifiable browsing and purchase history" that is compiled into "detailed profiles"); *Griffith*, 697 F. Supp. 3d at 973-74 (C.D. Cal. 2023) (same); *Bales v. Sierra Trading Post, Inc.*, No. 13CV1894, 2013 WL 6244529, at *3 (S.D. Cal. Dec. 3, 2013) (finding "personal financial information" sufficiently "confidential").

Defendants' suggestion that there is a presumption that internet communications are not private (Mot. at 12) has been rejected by several courts. *See Brown*, 685 F. Supp. 3d at 938 ("California courts have never recognized a legal 'presumption' that internet communications are

not confidential under Section 632"); *see Griffith*, 697 F. Supp. 3d at 971 (same). Defendants cite to only one case *pre-dating* these decisions, which merely recognized that medical information is especially private but did not otherwise determine whether *other* types of internet communications are not confidential. Mot. at 12 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022)). But even if such a presumption existed, Defendants' interception of objectively sensitive data—and circumvention of privacy-protections—would fully rebut this presumption. *See Yoon v. Meta Platforms, Inc.*, No. 24-CV-02612, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024) (finding the presumption rebutted where the defendant intercepts objectively private data such as video viewing history).

**F. <u>Plaintiffs' CIPA § 638.51 Claim Should Be Sustained</u>**

CIPA § 638.51 prohibits the use of "pen register[s]" and "trap and trace device[s]" without a court order. *See* CIPA § 638.51. Consistent with CIPA's statutory definitions (CIPA § 638.50(c)), courts recognized that devices that record identifying information fall within this statute. *See Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. 2025) ("[T]he Trackers qualify as a 'device or process' because they constitute 'software that identifies consumers, gathers data, and correlates that data.'"); *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557, 2025 WL 2243615, at *5-6 (N.D. Cal. Aug. 6, 2025) (holding a tracking "pixel" that intercepts PII is a pen register); *Riganian*, 791 F. Supp. 3d at 1092-93 (same for an SDK); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3-4 (N.D. Cal. Dec. 12, 2024) (software trackers that intercept users' IP addresses are pen registers); *Fregosa v. Mashable, Inc.*, No. 25-CV-01094, 2025 WL 2886399, at *5-6 (N.D. Cal. Oct. 9, 2025) (same). Plaintiffs' allegations that Defendants intercepted names, phone numbers, emails, customer IDs, device identifiers, and IP addresses through its tracking software mirror these cases. ¶¶ 71, 75-78.

Defendants do not cite a single case[6] disputing the sufficiency of these allegations, but argue the *legislative history* suggests that CIPA § 638.51 only applies to telephone calls. Mot. at 13-14. The plain text of the statute proves otherwise. *See, e.g., Mirmalek*, 2024 WL 5102709, at *3 (rejecting argument that § 638.51 applies only to telephones based on the statute's plain language); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (same); *Gabrielli*, 2025 WL 1939957, at *11-12 (same); *Riganian*, 791 F. Supp. 3d at 1093 (same). But in any event, that the legislature considered limiting this provision to "telephone" lines, but ultimately did not do so, only confirms the law was intended to be broader. *See* Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015) at 10 (choosing to define these terms more broadly in recognition of the "age of rapidly changing technology").

Defendants' reliance on § 638.52(c) and (d)'s language—which are separate provisions—is also a red herring. Mot. at 13.[7] § 638.52 only lists the requirements for one specific type of pen register, those "installed on telephone line[s]". *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024). That cannot "alter the statutory definition of a pen register stated in § 638.50(b)." *Id.*; *see also Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (same).[8]

**G. <u>Plaintiffs' CDAFA Claim Should Be Sustained</u>**

Any plaintiff who suffers "damage or loss" by a CDAFA violation may bring a civil action.

---

[6] Defendants cite two 40-year-old cases generally explaining what "pen register" includes, not what it *excludes*, and have nothing to do with CIPA specifically. *See* Mot. at 12-13 (citing *Smith v. Maryland*, 442 U.S. 735 (1979); *United States v. New York Tel. Co.*, 434 U.S. 159 (1977).

[7] Defendants miscite these as § 638.32(c) and § 638.32(d)(1).

[8] Defendants' footnote argument that this statute was modeled after the Pen Register Act is equally meritless (Mot. at 13 n.4) because it (again) ignores the statute's plain language.

*See* Cal. Penal Code § 502(e)(1).[9] Courts routinely recognize that when a Defendant unjustly profits from Plaintiffs' data—like here—this is sufficient to satisfy CDAFA's "damage or loss" requirement. *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) (finding "misappropriation of [plaintiffs] data" may be found by a juror to constitute "damage or loss"). Plaintiffs also allege that Defendants' technology stores a series of cookies and unauthorized data points in Plaintiffs' local storage, and consumes CPU time and other device resources. ¶¶ 123-128. This too is sufficient to allege CDAFA standing. *See Rodriguez*, 772 F. Supp. 3d at 1110 ("even small harms" like "depletion" of "bandwidth" establish CDAFA standing); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 656 (N.D. Cal. 2024) (occupying "storage space" and resources and causing devices to "work slower" sufficient for CDAFA standing).

Nearly every case relied on by Defendants deals with the standard for UCL or conversion claims (i.e., requiring loss of money or property), which is not the same as the standard for CDAFA. Mot. at 14-15 (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) (evaluating the lost money or property requirement for UCL claim); *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (same); *Hubbard*, 2024 WL 3302066, at *9 (same); *Low*, 900 F. Supp. 2d at 1030 (noting conversion requires a property interest); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1074 (same)). But in any event, the idea that plaintiffs do not have a property interest in their own personal information has been rejected in more recent decisions. *See Turner v. Google LLC*, 737 F. Supp. 3d 869, 884 (N.D. Cal. 2024) ("[P]laintiffs have a property interest in their data.");

---

[9] Defendants do not challenge, and therefore concede, that Plaintiffs adequately allege all other elements of their CDAFA claim.

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (rejecting the applicability of *Low* because "California courts have also acknowledged that users have a property interest in their personal information"); *Griffith*, 697 F. Supp. 3d at 975-76 (same).

The only two CDAFA cases Defendants cite also do not warrant dismissal here either. Mot. at 14). In *Lineberry v. AddShopper, Inc.*, No. 23-CV-01996, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025), the plaintiffs vaguely asserted they suffered "damage or loss" but did not explain "how or why that is the case" such as by alleging there was a "market" for the data at issue. Similarly, the plaintiffs in *Hernandez-Silva v. Instructure, Inc.* did not "explain what valuable data defendant obtained from Plaintiffs." No. 2:25-CV-02711, 2025 WL 2233210, at *6 (C.D. Cal. Aug. 4, 2025). Here, Plaintiffs clearly allege their data is valuable and that there is a market—one that Defendants actively participate in. ¶¶ 1-8, 46-48, 53-59, 83-100.

Their separate assertion that Plaintiffs must allege they "intended to sell their information" is also wrong. Mot. at 14. An unjust profits theory does not require that a plaintiff allege they have an intent to sell their data, nor does Plaintiffs' device resource theory. *See Rodriguez*, 772 F. Supp 3d at 1110 ("[U]nder California law, [a] stake in unjustly earned profits exists regardless of whether an individual planned to sell his or her data[.]"); *Brown*, 685 F. Supp. 3d at 940 (finding CDAFA standing based on "misappropriated data" where plaintiffs alleged "there is a market for their data"). The cases Defendants cite relate to a "diminution of value" theory, which is beside the point in light of Plaintiffs' two viable theories of standing. *See* Mot. at 14-15 (citing *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) (dismissing CDAFA claim that was based on a "diminution of the value" theory); *Shah v. Capital One Fin. Corp.*, 768 F.Supp.3d 1033, 1047-48 (N.D. Cal. Mar. 3, 2025) (same); *Doe v. Cty. of Santa Clara*, No. 23-CV-0441, 2024 WL 3346257, at *9 n.7 (N.D. Cal. July 8, 2024) (rejecting "loss of value" in "PHI").

### H. <u>Plaintiffs' Unjust Enrichment and Injunctive Relief Claims Should Be Sustained</u>

Unjust enrichment can exist as a standalone cause of action. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (holding unjust enrichment claims can be stated either "as an independent cause of action or as a quasi-contract claim for restitution"). Several courts have allowed these claims to proceed where—like here—a defendant misappropriates the plaintiff's private data. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1008-09 (N.D. Cal. 2024) (sustaining unjust enrichment claim where plaintiff alleged that defendant "received, used, and/or sold Plaintiffs' . . . confidential tax and financial information"); *Riganian*, 791 F. Supp. 3d at 1095 (N.D. Cal. 2025) (sustaining unjust enrichment claim where defendant collected plaintiffs' identifiable "internet activity" to create a "surveillance ecosystem" "at the heart of its revenue generation"); *see also Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 455 (S.D.N.Y. 2016) (sustaining unjust enrichment claim where plaintiff "conferred benefits on [Defendant] by providing [Defendant] with their [identifying] information" and "Defendant unjustly retained those benefits").

Defendants' contention that Plaintiffs cannot bring standalone unjust enrichment claims is belied by this authority. The singular case it cites—where plaintiffs consented to the collection of data—does not support their position. *See* Mot. at 15 (citing *Perez v. Romantix Online, Inc.*, No. 25-CV-02465, 2025 WL 3085786, at *4 (N.D. Cal. Oct. 27, 2025)). Plaintiffs here have squarely alleged the lack of consent (¶¶ 107-116), and Defendants do not contend otherwise.[10]

Defendants' separate argument that Plaintiffs cannot seek equitable relief because they also seek compensatory damages misunderstands the nature of Plaintiffs' claims. Mot. at 16. As several courts have recognized, legal damages are insufficient to remedy privacy harms or data

[10] Plaintiffs agree injunctive relief cannot proceed as a standalone claim, but as a remedy.

misappropriation, like Plaintiffs allege here. *See Turner v. Apple, Inc.*, No. 5:20-CV-07495, 2022 WL 445755, at *4 (N.D. Cal. Feb. 14, 2022) (allowing equitable claims based on "misappropriated data" because "legal damages do not cover the full value of the harm"); *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (sustaining unjust enrichment claim where "the injury [] is an invasion of privacy that can never be fully remedied through damages"). And economic damages certainly are insufficient to remedy ongoing wrongdoing, warranting injunctive relief. *See Ziegler v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (explaining damages for past conduct is not an adequate remedy for future harm).

While Defendants rely on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), several courts have found that this precedent requires nothing more than alleging they lack an "adequate remedy at law" at the pleading stage. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023 (explaining *Sonner* only requires "generally" alleging lack of an adequate legal remedy); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (same); *Milstead v. Gen. Motors LLC*, No. 21-CV-06338, 2023 WL 4410502, at *7–8 (N.D. Cal. July 6, 2023) (same). Plaintiffs have met this requirement. ¶¶ 178, 189, 201, 214.

But in any event, the only thing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) actually precludes is instances where equitable relief is truly unnecessary to make a plaintiff whole, for instance, seeking a refund for a physical product as equitable relief, while also seeking to recoup the purchase price as legal damages. In such cases, it is clear that legal damages are adequate given that the relief sought is entirely duplicative. *Id.* at 844. The same reasoning does not apply here where monetary damages cannot provide a full remedy for privacy violations and misappropriation of Plaintiffs' data and, separately, do not touch Defendants' ongoing wrongdoing at all. *See Brooks*, 2021 WL 3621837, at *11 (refusing to apply *Sonner* where "the injury [] is an

invasion of privacy that can never be fully remedied through damages"); *Gutierrez v. Lemonade, Inc.*, No. 21-CV-7070, 2022 WL 3214852, at *5 (S.D.N.Y. Aug. 9, 2022) (sustaining injunctive relief claim where defendant's "storage and use of the plaintiffs' data is ongoing").

Neither of the two cases Defendants cite warrant a different conclusion here. *See* Mot. at 16. *In re Ford Tailgate Litig.*, No.11-CV-2953, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014) is the exact type of consumer product case (described above) where reimbursement for funds paid as an equitable remedy would be fully duplicative of legal damages for warranty and consumer protection claims. And *Hubbard*, 2024 WL 3302066, at *5-6 is inapplicable because, there, plaintiffs failed to explain at all why they were not "fully compensated" by their 50 existing legal claims, particularly where an FTC order had already "enjoin[ed] Google from using the misappropriated information." No similar FTC order exists here and there is nothing prohibiting Defendants' continued misappropriation and monetization of Plaintiffs' private, identifiable data.

## I. Defendants' Motion to Strike Should Be Rejected

### a. The Motion to Strike is Improper at this Stage

Motions to strike class allegations are strongly disfavored. *See Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010). This is because "it requires a reviewing court to 'preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *See id*. This is only appropriate where "no amount of discovery or time will allow for plaintiffs to resolve deficiencies . . . under Rule 23." *See Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 53 (E.D.N.Y. 2017).

Defendants cannot meet this standard because the very claims whose class allegations they seek to strike *are certified* on a regular basis. *See Rodriguez v. Google LLC*, No. 20-CV-04688-

RS, 2024 WL 38302, at *4-10 (N.D. Cal. Jan. 3, 2024) (certifying CDAFA and privacy classes); *Romero v. Securus Techs., Inc*., 331 F.R.D. 391, 415 (S.D. Cal. 2018) (same for CIPA).While Defendants may, post-discovery, seek to challenge the *scope* of the class or raise choice of law issues, their contention that this case cannot proceed past the *pleadings* as a class action lacks merit. *See Staubitz v. Arthrex, Inc.*, No. 1:23-CV-6004, 2024 WL 4350669, at *4 (E.D.N.Y. Sept. 29, 2024) (denying motion to strike premised on "choice-of-law" issues and inclusion of "out-of-state class members" because these are "predominance" questions for class certification); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 148 (S.D.N.Y. 2021) (denying motion to strike premised on "variations in state law" until there is a "more developed record"); *Khorrami v. Lexmark Int'l Inc.*, No. CV 07-01671, 2007 WL 8031909, at *2-4 (C.D. Cal. Sept. 13, 2007) (similar).

Defendants' recital of two categories of cases where such motions may be appropriate does not change this outcome. The first concerns post-discovery motions to strike where the record established class treatment was inappropriate, confirming their motion is categorically premature. *See* Mot. at 17 (citing *Grant v. New York Times Co.*, 329 F.R.D. 27, 31 (S.D.N.Y. 2018) (striking class allegations after *discovery* conclusively showed the classes were not sufficiently numerous); *Carovillano v. Sirius XM Radio Inc.*, 23 Civ. 4723, 2024 WL 3460040, at *6 (S.D.N.Y. July 18, 2024) (striking class allegations at *summary judgment* based on a class action waiver)).

The second group of cases are all consumer fraud and employment-related actions, where courts routinely find these violations take place only locally (i.e., at the point of sale or place of employment) such that variations in state employment and consumer protection laws preclude nationwide classes. *Id*. (citing *Kassman v. KPMG LLP*, 925 F.Supp.2d 453, 469 (S.D.N.Y. 2013) (striking class allegations that sought to apply New York employment law to non-New York employees); *Glass v. Tradesmen Int'l, LLC*, No. 5:19-CV-01331, 2020 WL 820655, at *10 (N.D.

Ohio Feb. 19, 2020) (same for employees outside of Ohio); *Cotter v. Lyft, Inc.*, 60 F.Supp.3d 1059, 1063-66 (N.D. Cal. 2014) (same for employees outside California); *Daly v. Glanbia Performance Nutrition, Inc.,* Case No. 23 C 933, 2023 WL 5647232, at *2-4 (N.D. Ill. Aug. 31, 2023) (striking class allegations in fraud case because they are governed by differing laws of each state where the product was "purchased"); *Sanders v. Apple Inc.*, 672 F.Supp.2d 987, 990 (N.D. Cal. 2009) (striking class allegations in fraud case where certain class members never saw the fraud at all); *Borgese v. Baby Brezza Enters. LLC*, No. 20 CIV. 1180, 2021 WL 634722, at *4-6 (S.D.N.Y. Feb. 18, 2021) (striking class allegations where plaintiffs' claims involved a "highly individualized inquiry" over "fraud" relating to an allegedly defective formula mixer)).

Neither of these conditions apply to Plaintiffs' claims here.[11] Unlike product misrepresentation or employment claims, Plaintiffs' and the Classes' claims do *not* turn on Plaintiffs' *physical location* or any individualized interactions with Defendants, but a common fact-intensive analysis (e.g., where did the interception occur, where was data used and monetized, where were business decisions made, and where were the entities that received this data) that requires discovery. *See* Section IV.I.b. Striking the class allegations at this juncture is improper.

**b. Extraterritoriality Does Not Bar CDAFA or CIPA Claims**

Defendants also incorrectly invoke the presumption against extraterritoriality with respect to Plaintiffs' CIPA and CDAFA claims. Mot. at 18-21. Courts frequently refuse requests to dismiss CIPA and CDAFA claims extraterritoriality grounds as premature. *See Meta Platforms, Inc.*, 690 F. Supp. 3d at 1078–79 (denying motion to dismiss non-resident CIPA claims on extraterritoriality grounds as premature); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024) (same);

[11] Plaintiffs do not dispute that California Constitutional privacy claims can only be brought by California residents and will pursue a California subclass for those specific claims.

*Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706, 2025 WL 844378, at *7 (N.D. Cal. Mar. 17, 2025) (same as to CDAFA). This is especially true where, as here, discovery is likely to confirm that non-California Class Members can maintain CIPA and CDAFA claims based on Defendants' extensive activity in California *See* ¶ 143 (alleging mParticle maintains a California office); ¶¶ 92, 171 (alleging partnerships with companies in California to use the identifiable profiles, including Google, Meta, and Adobe); *see also* ECF No. 42 at 4-5 (explaining mParticle's former Chief Marketing Officer and Head of Data resided in California alongside 26 other employees); *id.* (explaining mParticle's customers, such as SoFi, PayPal, Airbnb, and DryBar who use its technology reside in California); *see also Dave Vaccaro v. Protective Asset Prot., Inc.*, No. 2:25-CV-08918, 2025 WL 3482170, at *2 (C.D. Cal. Dec. 1, 2025) (denying motion to strike class claims in a CIPA action where "there may be discovery that could establish suitability for class treatment"); *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1079 (N.D. Cal. 2020) (same). Defendants' own authority acknowledges this analysis turns on much more than solely Plaintiffs' state of residence, despite their claim to the contrary. *See* Mot. at 20 (citing *Lineberry*, 2025 WL 551864, at *3 (noting that relevant facts for CIPA include but where data was "sent" and where "business decisions" occurred)). Their argument should be rejected on this basis alone.

The cases Defendants cite do not support their extreme request to strike the class allegations on the pleadings either. Nearly all of these cases are dismissed because *named plaintiffs* did not themselves reside in California and otherwise failed to plead a California connection. *See* Mot. at 19-21 (citing *DellaSalla*, 2025 WL 3034069, at *1, 3 (dismissing CIPA claims where every named plaintiff was a non-resident); *Jonczyk v. First Nat. Cap. Corp.,* No. SACV 13-959, 2014 WL 1689281, at *4 (C.D. Cal. Jan. 22, 2014) (same); *Doe v. Kaiser Foundation Health Plan Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *12-14 (same); *Lineberry*, 2025 WL 551864, at *3 (non-

California plaintiff with no allegation that any "unlawful conduct" took place in California). The two cases Defendants cite that address class composition are also inapposite. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) is a class certification opinion and thus supports Plaintiffs' position that Defendants' motion is premature. *James v. Walt Disney Co.*, 701 F.Supp.3d 942, 963-64 (N.D. Cal. Nov. 8, 2023) did not strike the class allegations, but narrowed the class to a California subclass after plaintiff conceded a "nationwide class is not possible." *Id*.

Here, Plaintiffs, as California residents, can undoubtably maintain CIPA and CDAFA claims on behalf of themselves and other Californians. And the question of whether unnamed Class Members in other states can also maintain these claims, as in *Yahoo*, should be deferred to class certification and based on a full record. *See FullStory*, 712 F. Supp. 3d at 1257 (deferring the issue until "class certification or summary judgment" because plaintiff, a non-resident, plausibly allege CIPA violations occurred in California, including allegations that the "design and marketing" of the offending technology occurred in that forum).

**c. Choice-of-Law Variations Are a Premature Basis to Strike Class Allegations at the Pleading Stage**

Defendants' challenges to Plaintiffs' and the Classes' common law claims fail for similar reasons. These arguments, like those regarding CIPA and CDAFA, improperly assume that the violation occurs in each unnamed Class Members' home state. This is wrong. The issue of which state's laws are implicated turns on where "the conduct" that "creates liability" occurs, not simply on residence. *See Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018). Answering this question requires discovery into Defendants' activity in California and elsewhere, which cannot be resolved now. *See Meta Platforms, Inc.*, 690 F. Supp. 3d at 1079; *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022) (deferring the question until class certification).

But even assuming that a choice of law analysis could be conducted on the current record

(and it cannot), Defendants cannot escape liability. Under California choice of law rules, once Plaintiffs allege that California has "significant contact[s]" to the claims at issue (which they have), it is Defendants who bear the "substantial burden" of showing that some other state's law should apply. *See Keilholtz v. Lennox Hearth Prods. Inc*., 268 F.R.D. 330, 341 (N.D. Cal. 2010). This is not a get-out-of-jail-free card, and Defendants' failure to complete the necessary steps of California's comparative interest analysis requires denying their motion. Mot. at 21-25.

Defendants' boilerplate claim that there are differences in state law highlight this deficiency. For instance, while Defendants claim there are variations in states' unjust enrichment laws, they never identify what "material" variation exists. *Compare* Mot. at 21-22[12] *with Keilholtz,* 268 F.R.D. at 341 ("[D]ifferences in state laws do not always outweigh the similarities, especially in cases concerning unjust enrichment claims."). They similarly assert intrusion upon seclusion claims have "disparities" but mention only New York and Vermont law. Mot. at 22.[13] What of the other 48 states? Their challenges to Plaintiffs' and the Classes' injunctive relief claims follow the same pattern, claiming only that two states consider the "public interest" and that Illinois does not, which is just untrue. *See JL Props. Grp. B, LLC v. Pritzker*, 185 N.E.3d 780, 792 (considering public interests); *Gialamas v. Deacon,* 2023 IL App (1st) 221400-U, 2023 WL 5444592, at *9 (App. Ctr. of Ill., Aug. 22, 2023) (same). The glaring absence of a comprehensive comparison of the state laws confirms this determination is premature. *See Keilholtz,* 268 F.R.D. at 341 (certifying nationwide class where defendants did not show "material" differences in state law).

---

[12] Defendants footnote a case under Oregon law acknowledging unjust enrichment claims lie in a "range of circumstances," *Tupper v. Roan*, 349 Or. 211, 223 (Or. 2010), and an action in New York recognizing it too would do the same, regardless of whether the party acted "wrongful[ly]." *Cruz v. McAneney*, 31 A.D. 54, 59 (2d Dept. 2006). It is unclear how this is a "material" difference.

[13] Like above, Defendants mention that some states require a "substantial" invasion of privacy (Mot. at 22-23) but fail to explain how that is different from California's requirement of "highly offensive" conduct. *Id*.

The gaps in Defendants' argument continue with their assumption that other states have "interests" (let alone a materially greater one than California) in having their law applied at all. Mot. at 23. Unlike in *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, (9th Cir. 2012) (Mot. at 23), which involved physical transactions occurring within those states' borders, such that they may have an interest in regulating that activity, this case involves technology companies (with key employees in California), intercepting data from websites (many of which are in California), who then use the data to profile individuals (from some currently unknown location, but presumably California), and facilitate targeted advertising, including sharing it with other third parties (many of whom, again, are in California, like Google, Meta, and Adobe).[14] *See* Section IV.I.b. As confirmed by its own authority (*Frezza v. Google Inc.*, No. 5:12-CV-00237, 2013 WL 1736788, at *7 (N.D. Cal. Apr. 22, 2013)), which state has a greater interest hinges on where the "last event" necessary to impose liability took place, something that Plaintiffs' allegations suggest was in California or, at a minimum, is unknown as of now.

Defendants' final assumption, that other unknown states' interests would be impaired if California law applied, fails for the same reasons. The Court cannot evaluate whether another state's interest would be impaired without first determining whether they even *have* a material interest, and, even then, whether there is a material variation in the law. Having failed to make this showing, Defendants' argument that the Court should strike the class allegations now collapses in on itself. Their motion to strike should be denied.[15]

## V. CONCLUSION

Defendants' Motions should be denied for each of the reasons described herein.

---

[14] Their repeat citation to *Kaiser* and *Yahoo* fails for the reasons described in Section IV.I.b.

[15] At a minimum, Plaintiffs' class allegations should not be stricken, and Plaintiffs' California-specific statutory claims should be limited to California residents.

Dated: January 14, 2026

*<u>/s/ Christian Levis</u>*

Christian Levis
Amanda Fiorilla
Rachel Kesten
Yuanchen Lu
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com
ylu@lowey.com

Heather Lopez (SBN 354022)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: hlopez@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF COMPLIANCE

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,229 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 14, 2026 *<u>/s/ Christian Levis</u>*